# IN RE PROCEEDINGS TO PUNISH ERNEST S. CARY FOR CONTEMPT OF COURT.[1]

December 4, 1925.

No. 24,907.

**Contempt.**

1. Power to punish direct contempt summarily exists in superior courts independently of statute—Court does not lose jurisdiction by deferring action in interest of justice—Time within which it must be exercised depends on circumstances of particular case—Such jurisdiction continues at least until trial is completed.   [Reporter.]

**Sentence for wilful contempt sustained.**

2. Certiorari to review judgment of district court that relator attorney was guilty of wilful contempt and that he be confined in jail for 30 days in punishment therefor—Sentence sustained where matters recited in order showed such breach of respectful conduct due to court and asserted manner of attorney was contemptuous and insolent.   [Reporter.]

See Contempt, 13 C. J. p. 5, § 3; p. 29, § 39; pp. 46, 47, § 62; p. 61, § 84; p. 104, § 168.

See 6 R. C. L. p. 491; 2 R. C. L. Supp. p. 133; 4 R. C. L. Supp. 419; 5 R. C. L. Supp. p. 346.

Upon the relation of Ernest S. Cary the supreme court granted its writ of certiorari directed to the district court for Ramsey county, R. D. O'Brien, J., to review proceedings in that court adjudging relator guilty of contempt and sentencing him to 30 days' imprisonment.   Affirmed.

*Robert M. Works,* for appellant.

*Harry H. Peterson* and *Charles L. Hayes,* for respondent.

[1]Reported in 206 N. W. 402.

PER CURIAM.

Certiorari to review the action of the district court of Ramsey county adjudging the relator guilty of wilful contempt of court and that he be confined in the county jail of Ramsey county for a term of 30 days as punishment therefor.

The conduct for which the relator was adjudged guilty of contempt occurred during the trial of the case of the State of Minnesota against Ben Gleeman and Abe Gleeman. The defendants in that case were on trial for the crime of murder in the first degree, and the relator was one of the counsel who conducted their defense. The court took no action against the relator at the time the acts were committed but, as soon as the jury had retired to deliberate upon their verdict, called him to the bar and imposed the sentence.

Contempts are distinguished as direct and constructive, direct contempts being those committed in the immediate presence of the court. Although the statute gives power to punish direct contempts summarily, that power exists in superior courts independently of a statute. The relator concedes that a court may punish summarily for any contempt committed in its presence during the progress of a trial, but contends that such contempts can be so punished only at the time they are committed, and that the court lost jurisdiction to punish as for a direct contempt by waiting until the jury had retired before taking action. This is his principal contention upon this appeal.

Jurisdiction to punish for a direct contempt attaches the instant the contempt is committed, and continues at least so long as may be necessary to afford the court a reasonable opportunity to vindicate its authority at a time and under circumstances where its action will have no untoward effect upon the business in which the court was then engaged. A court may, and usually does, impose punishment for a direct contempt at the time the offense is committed, but it does not follow that jurisdiction is lost by waiting for a more fitting or convenient time.

We know of no law or rule requiring the court to suspend a trial for the purpose of passing judgment on a contemner and making the

necessary record thereof. Where a defendant is on trial for a grave crime, it might result in serious prejudice to him if his attorney were to be adjudged guilty of contempt and subjected to punishment therefor in the midst of the trial. While the court may punish a direct contempt instanter, yet, if of opinion that imposing punishment at that time would be unwise, or that prejudice to some of the parties before the court might ensue therefrom, it may defer action in the interest of justice and fairness, and does not lose jurisdiction by doing so.

Of course the power to punish as for a direct contempt must be exercised promptly, if exercised at all, but the time within which it must be exercised is not well defined and depends in a large degree upon the facts and circumstances of the particular case. In the present case the power was exercised as soon as the jury had retired and before the verdict was returned, and we are clearly of opinion that jurisdiction to exercise it would continue at least until the trial was fully completed. Ex Parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 32 L. ed. 405; In re Maury, 205 F. 626, 123 C. C. A. 642; Middlebrook v. State, 43 Conn. 257, 21 Am. Rep. 650; Mahoney v. State, 33 Ind. App. 655, 72 N. E. 151, 104 Am. St. 276; Connell v. State, 80 Neb. 296, 114 N. W. 294. Whether such jurisdiction would continue after the trial then in progress had been concluded and the court had entered upon other business is a question not decided as it is not presented by this record.

The relator also contends that the facts recited in the order adjudging him in contempt do not show misconduct of such a character as to constitute a contempt within the meaning of section 9792, G. S. 1923, for the reason, "that it does not appear that the acts, at the time the petitioner was cited therefor, had any tendency to interrupt the business of the court."

He claims that to constitute a contempt within the meaning of the statute the misconduct must tend "to interrupt the due course of a trial or other judicial proceedings" at the time the punishment was inflicted, and that misconduct passed without action at the time it occurred cannot be considered as interrupting the due course

of the trial at a subsequent time. We cannot sustain this conten-
tion. As previously, stated, it was within the discretion of the court
to punish the contempt either when it occurred or at a later stage
of the proceedings.

The order recites that the relator was guilty of repeated acts of
contemptuous and insolent behavior towards the court and the judge
thereof while holding court, tending to discredit and interrupt the
due course of the trial, among which acts were the following. It
then quotes several brief passages from the transcript of the pro-
ceedings at the trial. Portions of the transcript preceding and fol-
lowing the passages quoted show that the manner in which the
relator had conducted himself was more offensive than the passages
quoted would necessarily indicate. We quote a short passage not
recited in the order as indicating his sneering and contemptuous
manner:

"Mr. Cary: Just take an exception to the county attorney, the
illustrious assistant county attorney, Mr. Butler, for the remarks,
statements and insinuations. The Court: I didn't hear anything
out of order. Mr. Cary: I am taking it on the record, not on what
the court heard. The court: You may have it. Mr. Cary: I
got it."

The relator insists that only the facts recited in the order can be
considered on this hearing and argues that these facts should not
be taken as showing disrespect to the court. In State v. Leftwich,
41 Minn. 42, 42 N. W. 598, it is said:

"The opportunity of the court, in whose presence an alleged con-
tempt is committed, to know and determine whether the acts or
words were done or said in disregard and contempt of its authority,
is vastly greater than we can have from merely reading the record
of such acts or words. Acts or words, when stated in writing, may
appear to have been entirely innocent, but may have been done or
spoken in such a manner as to have been in the highest degree a
breach of the respectful conduct due to courts when in the discharge
of their duty, and of the decorum and good order that ought to be

observed in their presence to enable them to properly perform their functions. For this reason we do not think we state the rule too strongly when we say that an order adjudging a criminal contempt ought not to be reversed unless it is so apparent that no contempt was committed as to indicate that the court exercised its authority capriciously, oppressively and arbitrarily."

One of the quotations from the transcript contained in the order shows that the relator persisted in a certain line of cross-examination after the court had repeatedly sustained objections to his questions and after the court had directed him to refrain from that line of examination. Another shows that he said to the court: "I am going to if I see fit," and a few moments later said: "I am not going to be frightened. I am going to have this record made up and I am going to have his answers in that record." Another shows that he made an objection to a question asked a witness by the prosecution, and, upon the court saying: "I did not hear you," responded: "The record has it."

Assuming, but not conceding, that only those parts of the record recited in the order can be considered, yet the matters so recited show such a disregard of the duties and obligations of an attorney to a court engaged in the trial of an important case and such a breach of the respectful conduct due the court that the judgment could not be reversed even if we were not governed by the rule established in the Leftwich case. As said in that case, the sneering sarcastic and insolent manner in which words are spoken is obvious to those who hear them, but is shown very imperfectly, if at all, by the printed record. And where the judgment asserts that the manner was contemptuous and insolent we must, in support of the judgment, take such to be the fact unless the contrary be shown. Here there is no showing to the contrary. We find nothing in the record which would justify a reversal and the judgment is affirmed.

WILSON, C. J. (dissenting in part.)

I am of the opinion that the matter for our consideration is limited to the recitals in the order of the trial court. Otherwise an

appeal is useless.   I concur in the conclusion that the facts as there-
in found are sufficient to constitute a contempt of court.   It was
trivial and not grave.   The discourtesies seemed reciprocal.   The
unusual and arbitrary power incident to the common idea of a judge
trying his own case should be exercised cautiously and only in the
maintenance of the dignity of the court and the unfettered admini-
stration of justice.   For this purpose admonition, reprimand or fine
are quite sufficient where counsel is acting under great stress in a
vigorously contested trial.   Conduct and utterances under such con-
ditions must not be taken too seriously.   In my opinion the imposi-
tion of a sentence of imprisonment in this case was immoderate and
oppressive and the judgment should be modified with directions to
impose a reasonable fine in lieu of imprisonment except in the
alternative.