STATE of Minnesota, Respondent,

v.

Roy Allen MARTIN, Appellant.

No. C6–95–542.

Supreme Court of Minnesota.

Nov. 21, 1996.

Maureen Williams, Law Office of Maureen Williams, Minneapolis, for Appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, Timothy Faver, Beltrami County Attorney, Bemidji, for Respondent.

## OPINION

KEITH, Chief Justice.

Appellant Roy Allen Martin appeals from an order of the Beltrami County District Court summarily sanctioning him for direct contempt of court based on his refusal to answer certain questions while testifying in his criminal trial. The court of appeals affirmed. On review, Martin argues that the district court erroneously found him guilty of direct contempt and, consequently, erred in punishing him summarily for his refusal to answer. Martin also contends that the district court's disposition of the contempt charge was untimely because the court de-

ferred its ruling until after he was acquitted by the jury.

We affirm.

## I.

Martin was tried before a jury in Beltrami County on charges that he sexually assaulted a Bemidji woman and burglarized her home. While on the stand as a witness in his own defense and when subsequently examined in chambers on February 7, 1995, Martin repeatedly refused to answer questions put to him involving his prior military service. He asserted that he could not answer the questions because of his "vow to the United States Service." When pressed by the prosecuting attorney and the trial judge, Martin admitted that he had no order or documentation to support his claimed vow.

When Martin persisted in his refusal to respond, the district court resolved to "deal with the contempt later" and continued the trial. The following day, the jury returned verdicts of not guilty on both charges. Following the reading of the verdicts, the district court dealt with Martin's previous refusal to answer. Before adjudging Martin guilty of contempt, the court offered him the opportunity to explain his refusal to answer. Martin responded that he refused to answer because he feared further delay if he discussed his military service. Because there was no documentation of his prior service, Martin explained, he feared a continuance would be required if he responded and would further prolong the trial.

The district court found Martin in direct contempt of court, sentenced him to 30 days in jail, and authorized his release because of time served while awaiting trial. The court of appeals affirmed, holding that by "willfully def[ying] the court's order to answer legal and proper questions," Martin committed direct contempt of court. *State v. Martin*, No. C6–95–542, 1995 WL 687553, at *2 (Minn. App. Nov. 21, 1995) (unpublished opinion). The court of appeals also held that although courts generally sanction direct contempt when the contemptuous conduct occurs, the district court did not relinquish its jurisdiction by failing to address the issue until the close of the proceedings. *Id.*

## II.

Contempt of court has traditionally been categorized in two distinct ways. First, contempt orders have been classified as "civil" or "criminal." *Minnesota State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 311 Minn. 276, 285, 248 N.W.2d 733, 741 (1976). Second, the contempts statute classifies contemptuous conduct as direct or constructive. *See* Minn.Stat. § 588.01, subd. 1 (1994).

■ Whether contempt is "civil" or "criminal" rests upon the court's purpose in sanctioning the contemnor, rather than the nature of the misconduct itself. *Knajdek v. West*, 278 Minn. 282, 285, 153 N.W.2d 846, 848 (1967). When the court's purpose in imposing sanctions is to coerce the witness's future compliance, we have traditionally regarded the contempt as civil contempt. *Minnesota State Bar Ass'n*, 311 Minn. at 285, 248 N.W.2d at 741. On the other hand, when the court acts to preserve its authority by punishing past misconduct, we have traditionally regarded the contempt as criminal. *Id.*

■ We recently substituted the terms "remedial" and "punitive" for the terms "civil" and "criminal" in classifying contempts. *State v. Tatum*, 556 N.W.2d 541, 544 n. 2 (Minn.1996). Because the court sought to sanction Martin for his past refusal to answer questions, and not to compel his future compliance, the contempt order in this matter is punitive. *See id.*

■ The district court held, and the court of appeals affirmed, that Martin's alleged contempt was direct contempt. *Martin*, 1995 WL 687553, at *2. Direct contempt occurs "in the immediate view and presence of the court." Minn.Stat. § 588.01, subd. 2. In contrast, constructive contempt is "not committed in the immediate presence of the court" and involves misconduct of which the court "has no personal knowledge." *Id.* § 588.01, subd. 3. Direct contempt may be punished summarily by the court, *id.* § 588.03, while punishment of constructive contempt requires additional procedural safeguards. *See, e.g., Tatum*, 556 N.W.2d at 545

n. 3; *Knajdek,* 278 Minn. at 284, 153 N.W.2d at 847; *Peterson v. Peterson,* 278 Minn. 275, 281, 153 N.W.2d 825, 830 (1967). Martin's refusal to answer questions before the court was direct contempt.

### III.

We first address Martin's contention that a contempt sanction was inappropriate based on his behavior. Citing this court's decision in *Minnesota State Bar Ass'n,* Martin argues that in order for conduct to be sanctioned as contemptuous, it must be established that the alleged contemnor acted contumaciously; in bad faith; and out of disrespect for the judicial process. 311 Minn. at 284, 248 N.W.2d at 740. Accordingly, Martin asserts he was not in contempt because he did not act with bad faith or engage in any conduct of a disrespectful nature.

We agree that Martin's refusals were not discourteous; however, we disagree with his conclusion that he was not in contempt. Although *Minnesota State Bar Ass'n* includes the three-part test cited by Martin, we expressly noted in that case, "It is well established that an order directing a witness to answer questions must be obeyed, and a failure to obey such order subjects the witness to a contempt citation, even if the order was erroneous or improvident." *Id.* at 283, 248 N.W.2d at 740.

It is irrelevant that Martin did not act in a discourteous or boisterous manner. In *United States v. Wilson,* 421 U.S. 309, 314–15, 95 S.Ct. 1802, 1805–06, 44 L.Ed.2d 186 (1975), the United States Supreme Court held that "[the witness's] refusals to answer, although not delivered disrespectfully, plainly * * * constitute contemptuous conduct." The Court continued, "The refusals were contemptuous of judicial authority because they were intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice." *Id.* at 315–16, 95 S.Ct. at

1806 (footnote omitted). Similarly, we find that Martin's refusals disrupted the orderly progress of his criminal trial and were contemptuous of the authority of the court.

Martin next asserts that even if his refusal to answer can be considered contemptuous, the district court erred in determining that such a refusal is direct contempt of court, punishable summarily by the presiding judge. Minnesota Statutes section 588.01, subdivision 2 defines direct contempts as those occurring in the "immediate view and presence of the court." [1]

Martin contends that no act of contempt was committed in the immediate view and presence of the court because the judge had no firsthand knowledge of the legitimacy of his reasons for refusing to answer. Martin cites *State v. Garcia* and *Knajdek v. West* in support of his contention. *State v. Garcia,* 481 N.W.2d 133, 137–38 (Minn.App.1992) (finding defendant's false statements to the court not direct contempt because the judge had no firsthand knowledge of the falsity at the time of the statement); *Knajdek,* 278 Minn. at 284–85, 153 N.W.2d at 847–48 (1967) (finding an attorney's "willful and inexcusable" failure to appear in chambers on time was not direct contempt because the judge had no firsthand knowledge of the reasons for his tardiness).

*Garcia* is clearly distinguishable in that the falsity of the defendant's statement to the court in that case was not known to the court during the proceedings. *Garcia,* 481 N.W.2d at 137–38. In contrast, Martin's refusal to testify was clearly a matter about which the court had firsthand knowledge during the course of the proceedings. Similarly, *Knajdek* is distinguishable because literally nothing happened before the court, save counsel's unexplained failure to appear. *Knajdek,* 278 Minn. at 284, 153 N.W.2d at 847. Thus, while the *Knajdek* court had no personal knowledge of the reasons for the alleged contempt, Martin's refusal to answer

---

1. **Subd. 2. Direct.** Direct contempts are those occurring in the immediate view and presence of the court, and arise from one or more of the following acts:

    (1) Disorderly, contemptuous, or insolent behavior toward the judge while holding court,

tending to interrupt the due course of a trial or other judicial proceedings;

    (2) A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the business of the court.

Minn.Stat. § 588.01, subd. 2.

in this matter occurred in the immediate view and presence of the court and the court had personal knowledge of the proffered reasons for that refusal at the time of the contempt.

We find the United States Supreme Court's holding in *Wilson* instructive. In *Wilson*, the Court held that summary punishment for direct contempt is appropriate in response to a witness's refusal to answer lawful questions in open court. 421 U.S. at 314–16, 95 S.Ct. at 1805–06. Accordingly, we conclude that Martin was in direct contempt of court and, thus, subject to summary punishment by the district court.[2]

## IV.

Martin's final contention is that the district court's summary punishment of his direct contempt was untimely. Martin asserts that because the power to summarily punish direct contempt is conferred upon courts so that they might restore the authority and dignity of the court when confronted with contemptuous acts, all corrective action should be immediate. *See Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 394–95, 69 L.Ed. 767 (1925) ("[T]he need for immediate penal vindication of the dignity of the court created [summary punishment of direct contempt]."). By failing to punish him immediately for his acts of contempt, Martin asserts that, at a minimum, the court waived its right to punish him without the procedural safeguards incumbent in the punishment of constructive contempt.

We first addressed this issue in *In re Cary* in 1925. In *Cary*, the district judge took no action against the attorney-contemnor until after the jury retired to deliberate. 165 Minn. 203, 204, 206 N.W. 402, 402 (1925).

We upheld the court's delay against the contemnor's challenge that the court lost jurisdiction by delaying, stating, "A court may, and usually does, impose punishment for a direct contempt at the time the offense is committed, but it does not follow that jurisdiction is lost by waiting for a more fitting or convenient time."[3] *Id.*

The United States Supreme Court has had opportunity to consider a district court's deferral in sanctioning direct contempt only slightly more frequently than this court. The Court's leading decision on the deferral of sanctions is *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). In *Sacher*, the Court conferred broad discretion on trial courts to defer the exercise of their summary contempt powers. *Id.* at 10–11, 72 S.Ct. at 455–56. Although the attorney-contemnors were not sanctioned by the trial judge until the end of a 9–month trial, *id.* at 3, 72 S.Ct. at 452, the Court upheld the summary sanction, stating, "if the judge deems immediate action inexpedient he should be allowed discretion to follow the procedure taken in this case." *Id.* at 10, 72 S.Ct. at 455.

We agree that judges must have the discretion to defer sanctioning direct contempt when they believe that sanctioning the contemnor immediately would be unreasonably disruptive, unduly prejudicial, or otherwise unwise. Accordingly, we conclude that the district court acted within its discretion in allowing Martin's trial to continue and deferring consideration of the contempt issue until after the jury returned its verdict. We note, however, that whenever practical, courts should warn recalcitrant witnesses of the potential consequences of refusal to answer prior to imposing sanctions and should dispose of direct contempt charges as expedi-

---

**2.** We are aware that section 588.01, subdivision 3 lists "refusing to be sworn or to answer as a witness" among forms of constructive contempt. Minn.Stat. § 588.01, subd. 3(8). We note, however, that "witness" is commonly used to refer to "one who gives evidence under oath or affirmation, either orally or by affidavit or *deposition.*" Bryan A. Garner, *A Dictionary of Modern Legal Usage* 938 (2d ed.1995) (emphasis added). The

provisions of section 588.01, subdivision 3(8) are apparently intended to refer to circumstances such as are posed by the reluctant deponent, whose refusal to answer questions is not in the direct presence of the court.

**3.** In *Cary*, however, we reserved the issue of whether jurisdiction would have continued after

tiously as possible.[4]

Affirmed.

BLATZ, J., took no part in the consideration or decision of the case.

the verdicts had been returned. 165 Minn. at 205, 206 N.W. at 403.

4. As the United States Supreme Court noted in *Mayberry v. Pennsylvania*, "Instant treatment of contempt where lawyers are involved may great-

ly prejudice their clients but it may be the only wise course where others are involved." 400 U.S. 455, 463, 91 S.Ct. 499, 504, 27 L.Ed.2d 532 (1971).