*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0693**

Lynne A. Torgerson, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed May 26, 2015
Reversed and remanded
Reilly, Judge**

Ramsey County District Court
File No. 62-CR-11-8197

Matthew D. Forsgren, Greene Espel PLLP, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Hudson, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges the postconviction court's denial of her petition for relief from her convictions for direct and constructive contempt. Because we determine that the district court erred by characterizing appellant's contempt convictions as petty

offenses, and because appellant is entitled to criminal procedural safeguards for constructive contempt, we reverse and remand.

## FACTS

From October 3-6, 2011, appellant-attorney Lynne Torgerson represented a criminal defendant at trial on a felony second-degree drug possession charge. At approximately 4:20 p.m. on October 6, the jury was excused to begin its deliberations. After the jury left the courtroom, the district court informed counsel that it intended to allow the jurors to deliberate until 6:00 p.m. Because the jury would deliberate for no more than 90 minutes, the district court instructed the attorneys to "be available within 10 minutes of a phone call" and leave a phone number where they could be reached. The district court also informed counsel that it would contact them in the event the jury had a question and ask them to return to the courtroom to hear the question and discuss the appropriate response.

At approximately 5:40 p.m., the bailiff informed the judge that the jury had a question about whether they could consider a certain piece of evidence. The district court clerk contacted the attorneys and directed them to return to court to discuss the issue. The district court clerk reached appellant at approximately 5:50 p.m. and informed her that the judge needed both attorneys and the criminal defendant to return to the courthouse. Appellant asked why the district court wanted her to return and argued with the clerk that she only needed to return if there was a jury question or a verdict. The clerk put appellant on hold, and appellant hung up on the clerk. The district court clerk

2

called appellant back and repeated that she needed to return to court. Appellant again refused to return to court. The district court clerk placed the judge on the line.

The judge indicated that there was a "critical issue" requiring appellant to return to the courtroom. Appellant refused to return. The district court judge reminded appellant that she was expected to be able to return within ten minutes of a phone call, but she again asserted that she did not have to return. At that point, the district court judge demanded that appellant return to the courtroom immediately. Appellant refused to do so unless the district court would tell her what the matter involved. The district court judge informed appellant that the jurors had submitted a question, but declined to provide further information until both attorneys were present. Appellant agreed to turn around and come back to the courthouse, but indicated she would not return until 7:00 p.m., over an hour later. Because staffing issues prevented the jury from deliberating beyond 6:00 p.m., and because the jury could not continue deliberating without an answer to their question, the district court judge instructed appellant to return the following morning at 9:00 a.m. The jury was excused.

Court reconvened the following morning, October 7. The district court reiterated on the record that it ordered appellant to return to the courthouse the prior evening, but that she had refused. The district court stated that a court exhibit containing information previously excluded by the court in pretrial motions had been inadvertently disclosed to the jury. The prosecutor suggested that the district court declare a mistrial. The district court called a recess to give appellant time to discuss the issue with her client, after which the defendant also requested a mistrial. The district court declared a mistrial and set a

3

new pretrial date.  Appellant then stated that "I don't agree with the court's statement of facts with respect – with what happened last night."  The following exchange occurred:

> THE COURT:  Let me ask you a question.  Did I direct that you return to the courthouse when I spoke with you just before 6:00 o'clock?
> MS. TORGERSON:  I guess I . . .  am going to request a lawyer.  I don't know what the Court's intention is right now.
> THE COURT:  I'm asking the question did I direct you to return to court just before 6:00 o'clock.
> MS. TORGERSON:  I'm invoking my right to remain silent and to counsel.
> THE COURT:  All right.
> MS. TORGERSON:  And I would – I would . . .
> THE COURT:  Stop talking.  You have already invoked your right to remain silent, so remain silent.  Counsel, I find you in direct contempt of the Court.  I also find you in constructive contempt of Court for your refusal to return to the courthouse as directed, your refusal to be available within 10 minutes of a phone call as directed, your refusal repeatedly during the course of this trial to stop talking when the Court directed you to stop talking.
>
> The refusal to return to court is both constructive and direct contempt, or either.  Constructive because it didn't happen in the presence of the judge.  Direct because it happened to the judge while the judge was speaking to you on the phone.
>
> As a result of your refusal to timely return to court, we had 12 jurors sitting, waiting, and having this on their minds overnight and now until 10:15 this morning, when this matter could have been resolved yesterday evening by 6:00 o'clock.
>
> As a result of my finding of both constructive and direct contempt, I'm going to order that you pay a fine of $250.

On October 13, the district court issued a contempt order concluding that: (1) appellant was in direct contempt of court for refusing to return to court as directed on October 6; (2) appellant was in constructive contempt of court for refusing to return to

4

court as communicated over the telephone by the district court clerk and the district court judge; and (3) appellant was in direct contempt of court for failing to return to court within ten minutes of a phone call from the court. The district court ordered appellant to pay a $250 fine for her direct contempt of court but did not assess any additional fines for her constructive contempt of court.

Two years later, appellant filed a petition for postconviction relief asserting that the contempt-convictions were unlawful and unconstitutional. Appellant claimed that she was deprived of a jury trial, deprived of a lawyer, deprived of an opportunity to testify, and not given notice of the contempt charges against her. The petition was uncontested.[1] The district court issued an order on February 20, 2014, denying appellant's petition on the grounds that it lacked merit and was frivolous. The district court concluded that the contempt charge qualified as a petty misdemeanor and, as such, did not constitute a crime for which postconviction relief could be sought. This appeal followed.

## D E C I S I O N

### I.

Appellant argues that the district court erred by denying her petition for postconviction relief. We review a denial of a petition for postconviction relief for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A

---

[1] A copy of the petition was tendered to the St. Paul City Attorney's Office. That office advised the district court that it was not the prosecuting authority in the matter and forwarded it to the Ramsey County Attorney's Office, which did not submit a response. On appeal, the Ramsey County Attorney's Office acknowledged that it prosecuted the underlying felony criminal case and stated that appellant's petition presented a potential conflict of interest, and, accordingly, it did not intend to take any action or respond to the appeal.

postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* Upon review of a district court's decision to deny relief, we review issues of law de novo and issues of fact for sufficiency of the evidence. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007).

In its order denying the postconviction petition, the district court found that "[a] petty misdemeanor does not constitute a crime; a fine of not more than $300 may be imposed." *See* Minn. Stat. § 609.02, subd. 4a (2010) ("'Petty misdemeanor' means a petty offense which is prohibited by statute, which does not constitute a crime and for which a sentence of a fine of not more than $300 may be imposed."). The district court determined that because the contempt conviction resulted in a fine of only $250, it qualified as a petty misdemeanor and appellant could not seek relief through the mechanism of a postconviction petition. *See Freeman v. State*, 804 N.W.2d 144, 146 (Minn. App. 2011) ("[P]ostconviction relief is not available to an individual convicted of a petty-misdemeanor offense, because such an offense is explicitly defined as not constituting a crime."), *review denied* (Minn. Dec. 13, 2011). Appellant argues that the district court erred in this determination, and we agree.

The contempt statute authorizes a court to "punish a contempt by fine or imprisonment, or both." Minn. Stat. § 588.02 (2010). A person adjudged guilty of contempt is subject to punishment of "a fine of not more than $250, or by imprisonment in the county jail, workhouse, or work farm for not more than six months, or by both." Minn. Stat. § 588.10 (2010). We have previously treated contempt as a misdemeanor offense, rather than a petty misdemeanor offense. *See State v. Tatum*, 556 N.W.2d 541,

6

545 (Minn. 1996) (applying misdemeanor penalty limitations articulated in Minn. Stat. § 588.20). And although the district court limited appellant's penalty to a $250 fine and did not impose a jail sentence, sections 588.02 and 588.10 both contemplate imprisonment as a possible punishment. Because imprisonment may be imposed as a penalty for contemptuous conduct, we conclude that the district court's characterization of appellant's contempt convictions as petty offenses is "based on an erroneous view of the law." *Riley*, 819 N.W.2d at 167; *see also* Minn. Stat. § 609.02, subd. 3 (2010) ("'Misdemeanor' means a crime for which a sentence of not more than 90 days or a fine of not more than $1,000, or both, may be imposed."). We therefore reverse and remand.

## II.

### A.

Appellant argues that the district court erred in finding her guilty of criminal contempt. The first step in our review is to determine the purpose of the court's contempt order, which can be either remedial or punitive. *Tatum*, 556 N.W.2d at 544. The primary purpose of remedial, or civil, contempt orders is to "vindicat[e] the rights of a party by imposing a sanction that will be removed upon compliance with a court order that has been defied." *Id*. The primary purpose of punitive, or criminal, contempt orders is to preserve the court's authority "by punishing the contemnor for past behavior." *Id*. Here, the district court's order was intended to punish appellant for her misconduct in failing to appear in court as ordered, rather than to induce her compliance with future orders. Accordingly, it is evaluated as a punitive contempt order. We review punitive contempt orders for "arbitrariness, capriciousness, and oppressiveness." *Id*. at 547.

7

**B.**

Appellant challenges the district court's determination that her conduct qualified as both direct and constructive contempt. Minnesota law recognizes two kinds of contempt. Minn. Stat. § 588.01, subd. 1 (2010).

> Direct contempts are those occurring in the immediate view and presence of the court, and arise from one or more of the following acts: (1) disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other judicial proceedings; (2) a breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the business of the court.

*Id.*, subd. 2 (2010).

Constructive contempt, by contrast, are those acts "not committed in the immediate presence of the court, and of which it has no personal knowledge" and may include "disobedience of any lawful judgment, order, or process of the court" or "unlawful interference with the process or proceedings of a court." *Id.*, subds. 3(3), 3(7) (2010). We will reverse a district court's decision to invoke its contempt power only upon a showing that the district court abused its discretion. *Mower Cnty. Human Servs. v. Swancutt*, 551 N.W.2d 219, 222 (Minn. 1996). The factual findings of a contempt order will only be reversed if they are clearly erroneous. *Id.*

Appellant argues that her direct criminal contempt conviction should be vacated because her conduct was not directly contemptuous. Our review of the record reveals that appellant's conduct toward the court was extremely disrespectful. The district court ordered the parties to return to court within ten minutes of a phone call from the court.

8

The district court clerk contacted appellant by telephone and instructed her to return to court. Appellant refused, and hung up on the clerk. The clerk called appellant back and repeated her request, and again, appellant refused. The judge then picked up the telephone and ordered appellant to return to court. Appellant refused to comply with the judge's reasonable request. If appellant had returned to court as ordered, the judge would have been able to address the jury's question immediately and discharge the jury that evening. By refusing to return to court as ordered by the judge, the judge was put in the position of asking the jurors to return the next morning, thereby inconveniencing 12 citizens.

The district court judge characterized appellant's refusal as direct contempt "because it happened to the judge while the judge was speaking to [appellant] on the phone." While appellant's conduct was rude and insolent, we are not convinced that it rose to the level of directly contemptuous conduct. Caselaw establishes that contempt is direct "only if the judge has personal knowledge, at the time the contumacious conduct occurs, of *all* the operative facts which constitute the offense of contempt and are necessary for a proper adjudication of appellant's guilt." *State v. Garcia*, 481 N.W.2d 133, 137 (Minn. App. 1992). And in *Knajdek by Knajdek v. West*, our supreme court held that where an attorney failed to appear on time for a hearing pursuant to an order from the court, the alleged contempt was constructive, rather than direct. 278 Minn. 282, 284, 153 N.W.2d 846, 848 (1967).

Here, it is uncontested that appellant's conduct, which may have been "disorderly, contemptuous, or insolent," did not take place while the judge was "holding court," nor

9

was it a boisterous or violent disturbance "tending to interrupt the business of the court." Minn. Stat. § 588.01, subd. 2 (2010). Minnesota recognizes a district court's inherent power to summarily punish direct contempt committed in the presence of the court in order to "preserve the dignity of the courtroom proceedings." *State v. Whitcomb*, 399 N.W.2d 124, 125-26 (Minn. App. 1987), *review denied* (Minn. Feb. 13, 1987); *Peterson v. Peterson*, 278 Minn. 275, 279, 153 N.W.2d 825, 829 (1967) (justifying summary disposition of direct contempt due to the "urgent and immediate necessity of maintaining order in the courtroom"). Given the facts, we conclude that appellant's conduct is more properly classified as constructive contempt.

## C.

We next turn to the question of whether the district court erred by summarily punishing appellant's poor conduct and bad attitude toward the court. While a district court may summarily punish direct contempt, Minn. Stat. § 588.03 (2010), constructive criminal contempt requires criminal procedural safeguards, including the right to receive a written complaint, legal representation, and the right to a jury trial. Minn. Stat. § 588.09 (2010); *In re Welfare of A.W.*, 399 N.W.2d 223, 225 (Minn. App. 1987). Appellant argues that the district court violated her constitutional rights by summarily finding her in contempt. It is uncontested that appellant did not receive the procedural safeguards mandated by controlling statute. Therefore, we reverse and remand the matter to the district court for further proceedings. *See Garcia*, 481 N.W.2d at 138 (reversing appellant's conviction for direct contempt and remanding for further proceedings,

10

ordering that "[i]f the state pursues a [constructive criminal contempt] charge, appellant has to be offered all constitutional safeguards that exist for criminal defendants").

**Reversed and remanded.**