STATE OF MINNESOTA

IN SUPREME COURT

A22-1727

Court of Appeals                                                    Hudson, C.J.
                                                         Took no part, Hennesy, J.
State of Minnesota,

                         Respondent,

vs.                                                               Filed: July 31, 2024
                                                          Office of Appellate Courts
Blair Benedict Oberton,

                         Appellant.

———————————————

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Kristyn M. Anderson, Minneapolis City Attorney, Amy J. Tripp-Steiner, Assistant
Minneapolis City Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Richard A. Schmitz, Assistant
Public Defender, Saint Paul, Minnesota, for appellant.

———————————————

S Y L L A B U S

1.     This appeal is not moot because the collateral consequences exception to the

mootness doctrine applies.

2.     Although 180 days is the maximum sentence allowed by law when direct

contempt is summarily sentenced for punitive purposes under a district court's inherent

authority, a district court should, as a matter of comity to the Legislature, limit its

1

sentence—consistent with the maximum sentence for statutory misdemeanor contempt—to 90 days and a $1,000 fine unless the person's conduct is extraordinary.

3.      In the exercise of our supervisory power to ensure the fair administration of justice, we announce that when a district court determines in a contempt order that a defendant's conduct is extraordinary, the court must make oral or written findings describing the extraordinary conduct within 7 days of the direct contempt order so that an appellate court is able to review the district court's order for arbitrariness, capriciousness, and oppressiveness.

Reversed and remanded.

O P I N I O N

HUDSON, Chief Justice.

In this case we are asked to address the authority of the district court to sentence a defendant summarily for direct contempt. The district court found appellant Blair Benedict Oberton in direct criminal contempt of court for his profanity-laced outburst during a judicial proceeding that was partially directed at the district court judge. The district court then summarily imposed the maximum 180-day sentence allowed under its inherent authority. This appeal presents two questions: first, whether this appeal is moot because Oberton has fully served his sentence; and second, whether a district court is required to make a finding of extraordinary conduct when it summarily imposes the maximum 180-day sentence allowed by law. *See State v. Tatum*, 556 N.W.2d 541 (Minn. 1996). On appeal, Oberton contended that our decision in *Tatum* required the district court to make a finding of extraordinary conduct before imposing a 180-day sentence and that the record did not

reflect such a finding. The court of appeals affirmed, concluding that findings are not required in order to support a 180-day sentence summarily imposed under the district court's inherent authority to punish direct contempt.

By the time we granted Oberton's petition for review, he had already served his 180-day sentence. Notwithstanding that fact, we conclude that Oberton's appeal is not moot because the collateral consequences exception to the mootness doctrine applies. We also affirm our holding in *Tatum* and restate it to clarify the inapplicability of the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004). Finally, rather than decide whether *Tatum* requires a finding of extraordinary conduct, in the exercise of our supervisory power to ensure the fair administration of justice, we announce a new rule to ensure effective appellate review. Although we apply this rule prospectively, we conclude that under the unique circumstances of this case, the interests of justice and judicial economy require that the 180-day sentence be reversed and a 90-day sentence with credit for time served be entered on remand.

**FACTS**

On November 1, 2022, Blair Benedict Oberton made an in-custody appearance in district court on a felony charge with multiple misdemeanor trespass cases also pending. The court conditionally released Oberton from jail to a chemical dependency treatment program. The other conditions of his release included obeying all laws and staying away from the University of Minnesota campus, the site of his alleged trespasses. As part of his conditional release, Oberton was not required to post bail.

3

After Oberton was released, police again arrested him for misdemeanor trespassing on the University of Minnesota campus. On November 7, 2022, Oberton made an in-custody appearance in district court on the new trespass charge. The prosecutor requested bail be set at $300, emphasizing that Oberton had immediately returned to the University of Minnesota campus in violation of the November 1, 2022 conditional release order and that he had 20 other cases of trespass, at least some of which were pending at that time. Oberton's attorney asked the court to release Oberton without bail, emphasizing that Oberton was attending chemical dependency treatment on an outpatient basis.

After hearing from the prosecutor and Oberton's attorney, the district court set bail in the amount of $300 and ordered several release conditions. As the court announced these release conditions, Oberton interjected, "What about . . . [an] out of custody Rule 25, with bed-to-bed transfer, can we do that?"[1] He then expressed disbelief that the court was "making [him] post bail." When Oberton's attorney reiterated the request for a chemical use assessment at Oberton's direction, the court expressed its opinion that such an assessment was unnecessary given that Oberton was already in treatment. After acknowledging he was currently in treatment, Oberton expressed his belief that it was "ridiculous" the court was "requiring bail," at which point the district court told Oberton: "Thank you. That's enough. You're done."

---

[1] A "Rule 25" refers to a discontinued process for conducting mandatory chemical use assessments for individuals receiving publicly-funded substance use treatment under Minn. Stat. § 256D.05, subd. 1(a)(13) (2022). *See* Minn. Dep't Hum. Servs., Bull. No. 22-69-03, General Assistance and Direct Access to Substance Use Disorder Treatment (Apr. 22, 2022). The Rule 25 process was discontinued and, as of July 1, 2022, replaced by a separate process known as "Direct Access." *See id.*

Despite the district court's directive, Oberton engaged in a prolonged profanity-laced outburst that included statements directly impugning the dignity of the court. In response to Oberton's profane statements, the court told Oberton's attorney, "[Y]our . . . client's just been found in contempt. He'll be held." After Oberton repeatedly said, "Held, what?" the court replied, "How about 6 months." Oberton responded with another profanity-laced outburst that continued to impugn the dignity of the court. Ignoring the outburst, the court continued, "[S]ix months in jail. Do we know . . . how we do that?" The courtroom clerk replied, "[W]e'll find out, Your Honor," after which the court described the situation as "pretty spectacular."

Oberton appealed his 180-day sentence, contending that our decision in *State v. Tatum*, 556 N.W.2d 541 (Minn. 1996), required the district court to make a finding of extraordinary conduct before imposing a 180-day sentence and that the record failed to reflect such a finding. The court of appeals affirmed his sentence, explaining that although *Tatum* "suggests that a district court should explain its decision to exceed the presumptive 90-day maximum when summarily imposing a contempt sentence under its inherent authority," the court of appeals had previously rejected a similar argument in *State v. Lingwall*, 637 N.W.2d 311, 314 (Minn. App. 2001) (concluding factual findings were not necessary to support a 180-day sentence). The court of appeals then looked to the transcript of the district court proceedings to consider whether Oberton's contemptuous conduct warranted a 180-day sentence, ultimately finding the district court did not abuse its discretion in imposing a 180-day sentence. We granted Oberton's petition for review.

**ANALYSIS**

On appeal, Oberton argues that the district court erred because *State v. Tatum*, 556 N.W.2d 541 (Minn. 1996), requires a district court to make a finding of extraordinary conduct when it summarily punishes direct contempt with a 180-day sentence under the court's inherent authority. As a preliminary matter, we first determine whether Oberton's appeal is moot. Then, we revisit *Tatum*, affirming and clarifying its holding. Finally, we address Oberton's claim that *Tatum* requires a district court to make findings not made here and, in the exercise of our supervisory power to ensure the fair administration of justice, we announce a new rule to ensure effective appellate review in future cases.

I.

By the time we granted Oberton's petition for review, he had already served the 180-day sentence that is the subject of this appeal. Relying on the collateral consequences doctrine, Oberton argues his appeal is not moot because the 180-day sentence could have an impact on sentencing should Oberton be convicted of an offense in the future.[2]

Courts in this state may only hear actual cases and controversies. *In re Application of the Senate*, 10 Minn. 78, 81 (1865). When faced with an appeal where "a decision on the merits is no longer necessary or an award of effective relief is no longer possible," we will dismiss it as moot. *Dean v. City of Winona*, 868 N.W.2d 1, 5 (Minn. 2015).

---

[2]     Because we agree with Oberton that his appeal is not moot under the collateral consequences doctrine, we need not address his alternative arguments regarding the functional justiciability or repetition-evading-review exceptions to the mootness doctrine.

We have recognized that an appeal is not moot, however, "[w]here an appellant produces evidence that collateral consequences actually resulted from a judgment." *In re McCaskill*, 603 N.W.2d 326, 329 (Minn. 1999). We presume that collateral consequences result from a judgment—and thus do not require actual evidence—where a party demonstrates that " 'real and substantial' disabilities attach to a judgment." *Id.* (quoting *Morrissey v. State*, 174 N.W.2d 131, 133 (Minn. 1970)). "The standard for finding that the issues involved in a criminal appeal are moot is very stringent," and "[w]here there remains a 'possibility' that 'adverse collateral legal consequences' will inure to the complaining party, the case is not moot." *State ex rel. Djonne v. Schoen*, 217 N.W.2d 508, 510 (Minn. 1974) (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968)). We have previously concluded that potential sentencing consequences in the future satisfy the collateral consequences doctrine. *State v. Jones*, 516 N.W.2d 545, 546 n.1 (Minn. 1994) (concluding that an appeal was not moot because the appellant "now has a criminal history which could have an impact on sentencing should he be convicted of a crime in the future").

The State does not contest that Oberton's 180-day sentence could have an impact on sentencing should he be convicted of a felony offense in the future.[3] Instead, it argues that this possibility does not satisfy the "real and substantial disabilities" requirement of

---

[3] Because of the State's silence on this point, we need not decide whether a 180-day sentence summarily imposed under the district court's inherent authority to punish direct contempt falls within Minnesota Sentencing Guidelines 2.B.3.a(2), which directs that one unit of a criminal history point be assigned for each prior non-traffic gross misdemeanor conviction, and that four units equal one criminal history point.

7

the collateral consequence doctrine, which the State claims we narrowed last term in *Winkowski v. Winkowski*, 989 N.W.2d 302, 308 (Minn. 2023). We disagree.

Our analysis in *Winkowski* did not alter the "real and substantial disability" requirement to defeat mootness under the collateral consequences doctrine. Instead, our discussion of the doctrine in *Winkowski* was directed at the insufficiency of the appellant's *argument*, not the insufficiency of the alleged consequences themselves. *See id.* at 308–09 & n.8. Put differently, *Winkowski* simply discussed the established proposition that the party invoking the collateral consequences doctrine bears the burden of persuasion while effecting no change to the standard we apply when considering whether collateral consequences may be presumed to result from a judgment.

Because the parties do not dispute that the 180-day sentence could have an impact on sentencing should Oberton be convicted of a felony offense in the future, Oberton has satisfied the requirement of a "real and substantial disability," consistent with our conclusion in *Jones*, 516 N.W.2d at 546 n.1. We conclude that, under the collateral consequences doctrine, this appeal is not moot because there remains a possibility that adverse collateral legal consequences will inure to Oberton.

II.

Having decided Oberton's appeal is not moot, next we revisit *Tatum* and affirm its continued validity. In doing so, we restate our holding to clarify that the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004), which was issued after *Tatum*, is not implicated in a district court's sentencing decision when summarily imposing a sentence for punitive direct contempt.

In *Tatum*, we explained that "[t]raditionally, the law of contempt in Minnesota has been organized around two classifications—one judicially crafted and the other statutorily mandated." *Tatum*, 556 N.W.2d at 544. The first classification, as developed by our case law, looks to whether the purpose of the contempt order was punitive or remedial. *Id.* (citing *Knajdek v. West*, 153 N.W.2d 846, 848 (Minn. 1967)). Punitive, or "criminal," contempt orders generally seek to "vindicat[e] the court's authority by punishing the contemnor for past behavior." *Id.* (citing *Minn. State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 248 N.W.2d 733, 741 (Minn. 1976)). On the other hand, remedial, or "civil," contempt orders generally seek to "vindicat[e] the rights of a party by imposing a sanction that will be removed upon compliance with a court order that has been defied." *Id.* (citing *Minn. State Bar Ass'n*, 248 N.W.2d at 741).

The second classification of contempt is statutory and looks to the nature of the conduct to distinguish between direct and constructive contempt. Direct contempt—the type of contempt at issue in this case—occurs in the immediate view and presence of the court and may arise from either: (1) disorderly, contemptuous, or insolent behavior toward a judge while holding court, which tends to interrupt the due course of a trial or other judicial proceeding; or (2) a breach of the peace, boisterous conduct, or violent disturbance, which tends to interrupt the business of the court. Minn. Stat. § 588.01, subd. 2 (2022). Constructive contempt is one that is not committed in the immediate presence of the court, and of which the court has no personal knowledge. Minn. Stat. § 588.01, subd. 3 (2022). Direct contempt may be punished summarily, Minn. Stat. § 588.03 (2022), as occurred in this case, but constructive contempt may not. *Tatum*, 556 N.W.2d at 545.

The contempt statute includes two penalty provisions in Minn. Stat. § 588.10 (2022) and Minn. Stat. § 588.20 (2022), but "[n]either penalty provision applies to direct contempt, summarily sentenced, for punitive purposes." *Tatum*, 556 N.W.2d at 545. In such cases, the court's power to impose a sentence derives from its "retain[ed] inherent authority to punish direct contempt whether or not statutory authorization exists." *Id.* at 547; *see also In re Welfare of R.L.W.*, 245 N.W.2d 204, 205–06 (Minn. 1976) ("Contempt historically has been regarded as part of the court's inherent power to punish summarily offenses committed in its presence. . . . While [chapter] 588 declares the court's power, that contempt power exists independent of the statute. The power is essential to the effectiveness of all other court powers.").

In *Tatum*, we noted that a district court's inherent authority to summarily impose a sentence for punitive direct contempt is bounded by three "clear limitations." 556 N.W.2d at 547. First, district courts may not summarily impose a sentence in excess of six months due to the attachment of jury trial rights under the federal constitution. *Id.* (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27 & n.2 (1994)). Second, "appellate courts in this state retain their traditional power to review punitive contempt orders for arbitrariness, capriciousness, and oppressiveness." *Tatum*, 556 N.W.2d at 547. And third, "the principle of comity recommends deference to legislative judgments, especially in this area of law which so closely borders traditional criminal statutes," such that the statutory penalty provision for criminal contempt, Minn. Stat. § 588.20, should set "the presumptive maximum sentence . . . as a matter of comity and deference." *Tatum*, 556 N.W.2d at 547. Accordingly, we established the rule that—

10

consistent with the maximum sentence for statutory misdemeanor contempt—"a 90-day sentence and a $700 fine should ordinarily be the maximum sentence imposed" for punitive direct contempt. *Id.*

Our use of the phrase "presumptive maximum sentence," however, predated the United States Supreme Court's decision in *Blakely*, which clarified the constitutional significance of a "presumptive sentence," as well as our decisions applying the rule announced in *Blakely* to the Minnesota Sentencing Guidelines. *See, e.g.*, *State v. Shattuck*, 704 N.W.2d 131, 141–42 (Minn. 2005). Because the rule announced in *Blakely* is not implicated when direct contempt is summarily sentenced for punitive purposes under a district court's inherent authority, we restate our holding in *Tatum* as follows: Although 180 days is the maximum sentence allowed by law when direct contempt is summarily sentenced for punitive purposes under the inherent authority of the district court, a district court should, as a matter of comity to the Legislature, limit its sentence—consistent with the maximum sentence for statutory misdemeanor contempt—to 90 days and a fine of $1,000 unless the defendant's conduct is extraordinary.[4]

We also reaffirm that a district court's inherent authority to summarily impose a sentence for punitive direct contempt is bounded by the three "clear limitations" of jury

---

[4]    We note that *Tatum* stated the ordinary maximum sentence to be applied as "a 90-day sentence and a $700 fine." 556 N.W.2d at 547. Inasmuch as the Legislature has raised the maximum fine for a misdemeanor to $1,000, we alter the maximum allowable fine under the district court's inherent authority to summarily punish direct contempt accordingly. *See* Minn. Stat. § 609.02, subd. 3 (2022). We also clarify that, like a statutory misdemeanor, the ordinary maximum sentence in these circumstances may include a sentence of up to 90 days, a fine of up to $1,000, or both. *See id.*

trial rights, appellate review, and comity toward legislative judgments. *See Tatum*, 556 N.W.2d at 547.

III.

Having affirmed the holding in *Tatum* and restated it using language that clarifies the inapplicability of the rule announced in *Blakely*, we turn to Oberton's argument that *Tatum* requires a district court to make a finding of extraordinary conduct when direct contempt is summarily punished with a 180-day sentence under the court's inherent authority. The interpretation of our case law involves a legal question that we review de novo. *State v. Robideau*, 796 N.W.2d 147, 150 (Minn. 2011).

In arguing that *Tatum* requires a district court to make a finding of extraordinary conduct, Oberton focuses on the following language in our discussion of why a remand was required in that case: "The district court should have an opportunity to justify a more severe sentence for Tatum." *Tatum*, 556 N.W.2d at 548. According to Oberton, this language implicitly requires a district court to justify the imposition of a 180-day sentence, which is the maximum sentence that may be summarily imposed. In contrast, the State argues the language in question does not "mandate a particular way that a record must be made" before direct contempt is summarily punished with a 180-day sentence under the court's inherent authority. Instead, the State contends that the court in *Tatum* was simply providing the district court an opportunity to revisit the sentencing issue under the newly clarified law.

We need not decide whether *Tatum* requires a finding of extraordinary conduct because, in the exercise of our supervisory power to ensure the fair administration of

justice, we instead announce a new rule that is necessary to ensure effective appellate review. Such an approach is consistent with the approach we adopted in *State v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994).

In *Scales*, the appellant argued that under the Due Process Clause of the Minnesota Constitution, he had a right to have his custodial interrogation recorded. 518 N.W.2d at 592. In support of his argument, the appellant cited *State v. Robinson*, 427 N.W.2d 217, 224 n.5 (Minn. 1988), in which we observed that "recordation of all pre-statement conversations would afford the reviewing court an objective record upon which to rule, rather than one based upon self-serving or subjective assertions of the principals involved." In *Scales*, rather than deciding the due process issue, we invoked "our supervisory power to insure the fair administration of justice" and announced a prospective rule that "all custodial interrogation including any information about rights, any waiver of those rights, and all questioning shall be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention." 518 N.W.2d at 592.

Consistent with *Scales*, and because summary punishment of direct contempt is a serious exercise of judicial power, we invoke our supervisory power to ensure the fair administration of justice and announce that when a district court determines that a person's contemptuous conduct is extraordinary, the court must make oral or written findings describing the extraordinary conduct within 7 days of the direct contempt order so that an appellate court is able to review the district court's order for arbitrariness, capriciousness, and oppressiveness. This rule is warranted for two reasons.

First, effective appellate review of a decision to summarily punish direct contempt with the maximum 180-day sentence allowed by law necessitates findings describing the extraordinary conduct. Where, as here, the standard of review is abuse of discretion, a district court's findings play an important role in allowing appellate courts to ensure that the imposition of the maximum sentence allowed by law is, in fact, an exercise of that discretion and not merely a result of courtroom emotion, arbitrariness, or caprice. A decision to summarily punish direct contempt with the maximum 180-day sentence allowed by law draws on the district court's direct exposure to the person's contemptuous conduct, learned courtroom experience, and knowledge of the law in this state pertaining to similar instances of contempt. Appellate courts are not well-situated to engage in that comparative inquiry in the first instance based solely on the transcript of proceedings.

Second, we recognize that the circumstances in which a district court summarily punishes direct contempt with the maximum 180-day sentence allowed by law will vary widely. At times, a district court might be able to make oral findings on the record describing the extraordinary conduct that justified the maximum sentence allowed by law. Doing so would suffice under the rule we announce today. More frequently, however, circumstances may preclude the possibility or propriety of the district court making oral findings in the face of extraordinarily contemptuous conduct, especially when it occurs during large, busy court calendars. Consequently, the newly announced rule allows a district court to file written findings describing the extraordinary conduct justifying a sentence of between 90 and 180 days within 7 days of the direct contempt order so that an appellate court can review the district court's order for arbitrariness, capriciousness, and

14

oppressiveness.[5] We anticipate this additional time to file written findings will allow a district court to ensure its decision is well-considered and not unduly influenced by the charge of a heated courtroom interaction.

If a district court fails to comply with the newly announced rule, the maximum 180-day sentence allowed by law must be reduced to a 90-day sentence, as a matter of comity to the Legislature. Like the rule announced in *Scales*, the rule and remedy announced here apply prospectively.

Although we apply this rule and remedy prospectively, we conclude that under the unique circumstances of this appeal, the interests of judicial economy and justice require that on remand Oberton's 180-day sentence should be vacated and a 90-day sentence imposed. In reaching this conclusion, we note that remanding the case for further findings is not practical here because the district court judge who sentenced Oberton has retired. Further, removing the possibility that the 180-day sentence will affect Oberton's criminal history score will neither diminish the seriousness of Oberton's conduct nor encourage Oberton to commit similar contemptuous conduct in the future because Oberton served the maximum sentence allowed by law for his contemptuous conduct.

---

[5] In a separate but similar context, Minnesota Rule of Criminal Procedure 26.01, subd. 2, fixes the time for a district court's submission of certain written findings at 7 days after the completion of a court trial. We are persuaded that this sets a reasonable timeline for the submission of written findings under the present circumstances as well.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.


HENNESY, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.