# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1237

In re Craig E. Cascarano,
Appellant,

State of Minnesota,
Plaintiff,

vs.

Michael Demond Rashaun Mason,
Defendant.

**Filed October 19, 2015**
**Reversed**
**Cleary, Chief Judge**

Anoka County District Court
File No. 02-CR-14-3788

Craig E. Cascarano, Minneapolis, Minnesota (attorney pro se and appellant)

Lori Swanson, Attorney General, Alethea Marie Huyser, Assistant Attorney General, St. Paul, Minnesota (for respondent John Dehen)

Considered and decided by Cleary, Chief Judge; Hudson, Judge; and Kirk, Judge.

# S Y L L A B U S

A district court lacks inherent authority to summarily impose a monetary sanction on a lawyer who fails to appear for a scheduled hearing in a criminal case, without following the procedures set forth in Minnesota's contempt statutes, Minn. Stat. §§ 588.01-.15, .20 (2014).

# SPECIAL TERM OPINION

**CLEARY**, Chief Judge

Attorney Craig Cascarano was retained to represent a client on criminal charges in Anoka County. Cascarano was unable to appear with the client at a scheduled uncontested omnibus hearing. Cascarano arranged for another lawyer to appear with the client at that hearing, but the lawyer was mistaken about the date and failed to appear. Expressing concerns about efficiency and judicial resources, the hearing judge ordered Cascarano to pay $100 in court costs. Cascarano filed a motion to rescind the court costs, and the judge denied the motion.

In subsequent orders, the chief judge of the judicial district granted Cascarano's motion to disqualify the hearing judge from presiding over the criminal matter and stayed Cascarano's obligation to pay the $100 in court costs. In a memorandum, the chief judge noted that court costs could be imposed to punish an attorney's untimeliness or scheduling error in a criminal case only after compliance with applicable contempt statutes.

In response, the hearing judge issued another order, concluding that the chief judge had exceeded his authority in staying the order imposing court costs and directing Cascarano to "immediately pay the $100 in court costs." The hearing judge specifically disavowed any intent to impose punishment under the contempt statutes and relied on the court's inherent authority.

Cascarano filed a petition for a writ of prohibition seeking to prevent enforcement of the order for court costs. The special term panel concluded that it is appropriate to

2

treat the petition as a timely appeal. *See* Minn. R. Crim. P. 28.02, subd. 4(3)(b) (setting time for taking misdemeanor appeal as 30 days after final judgment or entry of order appealed); *see also State v. Pflepsen*, 590 N.W.2d 759, 764 (Minn. 1999) (recognizing court of appeals' authority to waive or suspend technical requirements and treat notice of appeal as petition for writ of prohibition). Because the hearing judge did not have authority to summarily impose court costs for the attorney's failure to appear, we reverse.

## D E C I S I O N

Cascarano argues that the hearing judge lacks inherent authority to order him to pay $100 in court costs for failure to appear at a routine, uncontested hearing in a criminal case. Whether the district court exceeded the scope of its inherent authority is a question of law this court considers de novo. *State v. M.D.T.*, 831 N.W.2d 276, 279 (Minn. 2013). We conclude that the judge's inherent authority to order court costs is subject to the limits of Minn. Stat. §§ 588.01-.15, .20 (2014).

"The judiciary's inherent power 'governs that which is essential to the existence, dignity, and function of a court because it is a court.'" *Id.* at 280 (quoting *In re Clerk of Lyon Cty. Courts' Comp.*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976)). Judicial power in Minnesota is vested in the state constitution. *Id.* (citing Minn. Const. art. VI, § 1, creating a "supreme court, a court of appeals, if established by the legislature, a district court and such other courts . . . as the legislature may establish"). When the court "came into existence it came with inherent powers. . . . derive[d] from the judiciary's 'right to protect itself, to enable it to administer justice whether any previous form of remedy has been granted or not.'" *Id.* (quoting *In re Disbarment of Greathouse*, 189

3

Minn. 51, 55, 248 N.W. 735, 737 (1933)) (other quotation omitted). For example, the courts have inherent power to make rules of practice, to admit attorneys to practice, and to suspend or disbar them. *Greathouse*, 189 Minn. at 54-55, 248 N.W. at 737. But the court's inherent authority is not absolute.

The test that appellate courts use to determine if inherent judicial authority exists requires us to consider "whether the relief requested by the court or aggrieved party is necessary to the performance of the judicial function as contemplated in our state constitution." *M.D.T.,* 831 N.W.2d at 280 (quotation omitted). This test must be applied "'with due consideration' for the other branches of government" and not "to serve the 'relative needs or . . . wants' of the judicial branch." *Id.* (quoting *Lyon Cty.*, 308 Minn. at 181-82, 241 N.W.2d at 786). In other words, "a court has inherent judicial authority to engage in activities that are necessary to the performance of judicial functions, but 'the judiciary is not to resort to inherent authority when doing so would not respect the equally unique authority of another branch of government.'" *State v. Ali*, 855 N.W.2d 235, 254 (Minn. 2014) (quoting *M.D.T.*, 831 N.W.2d at 280, 282 (quotation omitted)).

The contempt power is an example of this coordinated balance among branches of government. "Chapter 588 contains Minnesota's contempt statutes." *State v. Jones*, 869 N.W.2d 24, 27 (Minn. 2015). The statute is divided into two classifications: "one judicially crafted and the other statutorily mandated." *State v. Tatum*, 556 N.W.2d 541, 544 (Minn. 1996). Violations of sections 588.01-.15 are punishable at the court's discretion. *See id.* at 546. These sections also address the court's inherent contempt power to summarily punish offenses committed in the court's presence to preserve the

4

dignity of the courtroom proceedings. *See In re Welfare of R.L.W.*, 309 Minn. 489, 491-92, 245 N.W.2d 204, 205-06 (1976) (discussing chapter 588). But section 588.20 is a penal statute defining felony and misdemeanor contempt and is "prosecutable by the state like any other crime." *Tatum*, 556 N.W.2d at 546. In *Tatum*, the supreme court considered the legislative history of section 588.20 and concluded that the criminal contempt statute is separate from and does not limit judicial sanctions available under sections 588.01-.15. *Id.*

Contempt is also divided into two types: remedial (civil) and punitive (criminal). *Id.* at 544. The type of contempt depends on the court's purpose. *State v. Martin*, 555 N.W.2d 899, 900 (Minn. 1996). For example, civil or remedial contempt seeks to compel future compliance with a court order. *Id.* On the other hand, the primary purpose of criminal contempt is punitive—to vindicate the court's authority by punishing past misconduct. *Tatum*, 556 N.W.2d at 544. The district court judge or judicial officer may punish contempt by imposing a fine, imprisonment, or both. Minn. Stat. § 588.02 (2014); *see also* Minn. Stat. § 588.20 (defining criminal contempt punishable as a felony or misdemeanor).

Here, the order requiring Cascarano to pay $100 in court costs is criminal/punitive because it is intended to punish counsel's failure to appear at a hearing. *See Jones*, 869 N.W.2d at 29 (citing *Zieman v. Zieman*, 265 Minn. 190, 193 n.5, 121 N.W.2d 77, 80 n.5 (1963), which stated the object of criminal contempt "is to punish an individual because of his demonstrated disrespect for the court's orders").

Next, the contempt statutes provide that the nature of the contemptuous conduct can be direct or constructive. *Tatum*, 556 N.W.2d at 544. Direct contempts occur "in the immediate view and presence of the court," and may arise from "disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other judicial proceeding," or "a breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the business of the court." Minn. Stat. § 588.01, subd. 2. "Direct contempts *may* be punished summarily." *Tatum*, 556 N.W.2d at 545 (citing Minn. Stat. § 588.03). Constructive contempts, on the other hand, are not committed in the immediate presence of the court and may arise from any of 11 different acts or omissions, including "disobedience of any lawful judgment, order, or process of the court." Minn. Stat. § 588.01, subd. 3. "Constructive contempts *may not* be punished summarily." *Tatum*, 556 N.W.2d at 545. "Constructive contempt proceedings for *punitive* purposes entitle the accused to procedural safeguards including prosecution by the state, trial by jury, and proof beyond a reasonable doubt." *Id.* at 545 n.3. The supreme court has identified several reasons for this distinction. Because constructive contempt does not occur in the presence of the court, the urgency of maintaining order that justifies summary disposition of direct contempt is not present. *Peterson v. Peterson*, 278 Minn. 275, 279, 153 N.W.2d 825, 829 (1967). A formal hearing is also necessary to establish the facts of contemptuous conduct not occurring in the court's presence, and this requires that the contemnor be given notice and an opportunity to be heard. *Id.* Additionally, a constructive punitive contempt is an

6

"offense[] against the dignity of the state as a whole," and should be prosecuted by an attorney for the state. *Id.* at 279, 281, 153 N.W.2d at 830.

Cascarano's failure to appear for the uncontested omnibus hearing could be constructive contempt because the reason for counsel's failure to appear is what makes the conduct contemptuous or excusable, and the court had no firsthand knowledge of those reasons when it imposed court costs on Cascarano. *See Knajdek v. West*, 278 Minn. 282, 284-85, 153 N.W.2d 846, 848 (1967) (concluding counsel's failure to timely appear for scheduled hearing was constructive criminal contempt).

In summarily ordering Cascarano to pay $100 in court costs for failure to appear at the hearing, the hearing judge disavowed any intent to rely on the contempt statutes and relied on inherent authority. But as previously discussed, a judge's inherent authority to control the courtroom is a contempt power.[1] And a court does not have inherent authority

---

[1] The hearing judge relied on cases from other jurisdictions as support for a finding of inherent authority to assess costs for failure to appear for a hearing or trial. These cases do not support summary punishment. For example, the court in *Beit v. Prob. & Family Court Dept.* recognized that judges have inherent power to sanction attorneys for failure to appear for a scheduled trial, but also held that a judge may *not* use inherent power to summarily punish attorney's failure to appear and avoid the requirements of due process, which include notice and an opportunity to be heard. 434 N.E.2d 642, 647 (Mass. 1982). In *Coburn v. Domanosky*, the opinion notes, in dictum, that a court has inherent power to assess costs against counsel in a civil case for a scheduling error that results in expenses to the other party, but does not apply that remedy where the scheduling error was excusable. 390 A.2d 1335, 1338 (Pa. Super. Ct. 1978). And in *In re Gurwitch*, a $50 sanction for counsel's failure to appear was imposed *after* counsel was given an opportunity to explain why he did not call the court or arrange for another attorney to advise the court of his lateness. 256 A.D.2d 180, 180 (N.Y. App. Div. 1998). *Cf. Marcus v. Bamberger*, 180 A.D.2d 533, 534 (N.Y. App. Div. 1992) (concluding $100 sanction did not constitute abuse of discretion where due process considerations were satisfied by representation of counsel and opportunity to testify and offer evidence at a hearing). While these jurisdictions reference due process, the supreme court in *Peterson*

under chapter 588 to summarily punish an attorney's failure to appear in court. *Cf. State v. Tayari-Garrett*, 841 N.W.2d 644, 649 (Minn. App. 2014) (noting the district court found probable cause to believe the attorney was in constructive contempt under section 588.01, subdivision 3, and referred the matter to the county attorney, who prosecuted the matter under section 588.20, subdivision 2(4)), *review denied* (Minn. Mar. 26, 2014).[2]

Chapter 588 does not permit a court to summarily punish an attorney's failure to appear as constructive contempt. Because the hearing judge did not follow the proper procedure for punishing constructive contempt, and did not have inherent authority to impose court costs without complying with the contempt statutes, we reverse.

**Reversed.**

---

did not rule that the criminal procedural safeguards for constructive contempt were mandated by the constitution. 278 Minn. at 280-81, 153 N.W.2d at 829-30.

[2] We do not express any opinion as to whether failure to appear at a routine court proceeding violates a lawful judgment, order, or other process of court. *See Jones*, 869 N.W.2d at 27-28 (declining to define the scope of the word "mandate" for purposes of section 588.20, subdivision 2(4), which prohibits "willful disobedience to the lawful process or other mandate of a court"). *But cf. Tayari-Garrett*, 841 N.W.2d at 654 (concluding evidence sufficient to sustain contempt conviction under section 588.20, subdivision 2(4), where counsel failed to appear at "date certain" trial).