*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0761**

In re the Matter of:
Emily M. Pederson, petitioner,
Respondent,

vs.

Scott H. Meyer,
Appellant.

**Filed December 19, 2016
Affirmed
Jesson, Judge**

Olmsted County District Court
File No. 55-FA-14-2050

Jenny L. Nelson, Nelson Peterson Law, Rochester, Minnesota (for respondent)

Scott Meyer, Gainesville, Florida (pro se appellant)

Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

In this parenting-time dispute, appellant-father argues that the district court abused its discretion by (1) refusing to find respondent-mother in contempt of court for interfering with parenting time; (2) holding appellant in contempt of court for interfering with respondent's legal custody of the child; and (3) declining to admit evidence of respondent's

conduct that occurred prior to April 2013.  Appellant also asserts that the district court was biased against him.  We affirm.

## FACTS

Appellant Scott Meyer and respondent Emily Pederson, who were never married, have an eight-year-old child in common.  The parties lived together for a very short time in California after the child's birth.  Pederson and the child moved to Iowa in 2010 and to Rochester, Minnesota, in 2012.

The parties have engaged in litigation about the child's custody and parenting time since his birth.  The Iowa courts had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) from February 2010 until March 31, 2015.  The Minnesota district court determined that it had jurisdiction under the UCCJEA on March 31, 2015.

In the current matter, Meyer alleged that Pederson deprived him of parenting time granted by the Iowa court.  Under the Iowa order, Meyer was granted up to ten days of visitation during each calendar month.  Visitation was to occur during the first ten days of the month, unless Meyer notified Pederson in writing at least 30 days in advance that he intended to exercise his ten days of parenting time at a different time during the month.  The Iowa order was based on an oral stipulation between the parties; when the parties failed to agree to a written stipulation, the Iowa court adopted the oral agreement.  This resulted in an order that lacked clarity.  The Iowa court subsequently granted Pederson full legal custody of the child, but the parenting-time order remained unchanged.

2

In May 2015, Meyer moved to have Pederson held in contempt, alleging that she had interfered with his parenting time on three occasions: in July 2014, December 2014, and in March 2015. In support of his motion, Meyer filed additional motions or requests for judicial notice of Iowa and California orders; for an evidentiary hearing; to compel discovery; to compel release of psychological tests taken in 2007; for declaratory judgment, estoppel, and summary judgment; and for entry of Pederson's deposition into evidence.

In response, Pederson moved to have Meyer held in contempt for violating her sole legal custody of the child by seeking medical and dental care, and by removing the child from school without her consent.

An evidentiary hearing was held on October 7, 2015, before a district court referee. The referee summarily denied Meyer's motions for declaratory judgment, estoppel, and summary judgment. Prior to the hearing, the referee denied Meyer's motion to compel Pederson to release her psychological testing documents.

The referee found that Meyer had given Pederson more than 30 days' notice that he intended to exercise visitation on other than the first ten days of the month in March 2015, as set forth in the parenting-time order, but that Meyer failed to prove that Pederson violated the order as to July 4, 2014, and the Christmas holidays in 2014. The referee found Pederson in constructive civil contempt for the March 2015 violation.

The referee found that Meyer violated the order granting Pederson sole legal custody by keeping the child out of school, taking him to a different dentist while not permitting Pederson to take the child to a scheduled dental appointment, and not informing her of the recommended treatment. The referee found Meyer in constructive civil contempt

3

for violating Pederson's rights of legal custody. The referee found that conditional confinement of the parties was reasonably likely to produce compliance.

Based on these findings, the referee held both parties in contempt, sentenced each of them to thirty days' confinement, stayed execution of the sentences provided the orders were complied with, and fined each party $250. A district court judge approved the orders. Meyer filed a motion for district court review, and Pederson filed a responsive notice of review.

The district court held a review hearing in March 2016, and filed an order on April 14, 2016, affirming the referee's order. Meyer appeals from this order. Pederson filed, but later withdrew, a notice of related appeal.

## D E C I S I O N

### I. The district court did not abuse its discretion by invoking its contempt power.

A court may invoke the remedy of civil contempt to "induce future performance of a valid court order." *Newstrand v. Arend*, 869 N.W.2d 681, 692 (Minn. App. 2015) (quotation omitted), *review denied* (Minn. Dec. 15, 2015). A person may be held in civil contempt when he or she fails to obey a court order. *In re Cascarano*, 871 N.W.2d 34, 37 (Minn. App. 2015). If a person disobeys a court order in the presence of the court, the court may issue a summary punishment. *Id.* But if the disobedience of an order occurs outside of the courtroom, it is constructive contempt, for which there are additional procedural safeguards. *Id.* at 37-38.

"This court reviews a district court's decision to invoke its contempt power under an abuse-of-discretion standard. Factual findings of a contempt order will be reversed only

4

if they are clearly erroneous." *Crockerall v. Crockerall*, 631 N.W.2d 829, 833 (Minn. App. 2001) (citations omitted), *review denied* (Minn. Oct. 16, 2001). In order for a person to be held in civil contempt, the court must find that that person has "acted contumaciously, in bad faith, and out of disrespect for the judicial process." *Newstrand*, 869 N.W.2d at 692 (quotation omitted). The purpose of civil contempt, which is an "extreme remedy," is "to induce future performance of a valid court order, not to punish for past failure to perform." *Id.* (quotations omitted).

Before finding a party in civil contempt, the district court considers the factors set forth in *Hopp v. Hopp*, 279 Minn. 170, 156 N.W.2d 212 (1968). The *Hopp* case set forth eight requirements for a court's exercise of its civil contempt power: (1) the court must have subject matter and personal jurisdiction; (2) the acts a party is required to perform must be clearly defined; (3) the contemnor must have notice of the court's decree and sufficient time to comply; (4) the party alleging contemptuous behavior must apply to the court and specify the grounds for the complaint; (5) the contemnor is entitled to a hearing with due notice at which he can show compliance or explain his failure to comply; (6) after the hearing, the court must determine if the party has failed to comply with a court order and whether conditional confinement will compel compliance; (7) the court may not compel a person to perform something he is wholly unable to do but the contemnor has the burden of showing inability; and (8) the contemnor must be given an opportunity to effect his release by complying with or agreeing to comply with the order. *Id.* at 174-75; 156 N.W.2d at 216-17.

5

A. *Contempt decision regarding Pederson*

Meyer argues that the district court abused its discretion by refusing to find Pederson in contempt for denying his December 2014 parenting-time request. On October 30, 2014, Meyer told Pederson he wanted the child from December 27, 2014 to January 1, 2015, and from December 1 to December 6, 2014.

The parenting order, based on an oral stipulation, provides:

> [Meyer] shall have maximum continuing contact with the child, which contact shall include at least the following: ten overnight days per month . . . those ten days shall be exercised . . . the first ten days of each month unless the parties specifically agree otherwise.
>
> . . . .
>
> Provided further, that with respect to those ten days each month, the parties will endeavor to mutually agree upon the time but that [Meyer] may notify [Pederson] in writing or by electronic communication at least 30 days in advance of that particular month of his intention to exercise visitation other than the first ten days of the month, and if he so gives that election, that's when the parenting time will take place.

Pederson initially refused to agree to Meyer's proposed schedule because she and the child had plans for December 27 and 28, but ultimately Pederson agreed to parenting time from December 27 to January 10, 2015. During the parties' negotiation by email, Meyer agreed not to insist on parenting time on December 1 to 6. The district court concluded that Meyer's request did not fall within the terms of the parenting-time order.

Because no transcript of the hearing was provided, this court's review "is limited to determining whether the findings support the district court's conclusions of law." *Bormann v. Bormann*, 644 N.W.2d 478, 481 (Minn. App. 2002).

6

The district court made the following findings:

> 57. [Meyer's] claim that he was denied parenting time during the winter break 2014 when he did not get the days and dates he wanted while [Pederson] and the child were in Florida does not clearly fall within the "technical" terms specified, the first 10 days of the month or 30 day notice without including Christmas Day which is always to be [Pederson's] holiday.

> 58. [Pederson] claims when [Meyer] first told her the dates he wanted and she told him it would not work for her because of her holiday plans to be visiting relatives in Florida. [Meyer] did not request any other dates so they did not mutually agree to any other parenting time. If [Meyer] had asked for different dates, [Pederson] claims she would have agreed to something else.

> . . . .

> 61. [Meyer] did not provide enough credible evidence for the court to find that [Pederson] knowingly violated the custody decree as pertaining to . . . the Christmas 2014 holiday schedule.

The district court's findings do not support a conclusion that Pederson acted contumaciously or out of disrespect for the court's parenting-time order. The district court did not abuse its discretion by refusing to hold Pederson in constructive civil contempt for the December 2014 incident.

B. *Contempt decision regarding Meyer*

Meyer argues that the district court should not have found him in contempt because "[t]he rights and responsibilities of a parent exercising parenting time who does not have legal or physical custody are not clearly outlined anywhere." The district court included a *Hopp* analysis in its conclusions of law.

7

The district court, first finding that Pederson had sole legal custody of the child, made the following findings:

> 64. Legal custody means the right to determine the child's upbringing, including education, health care, and religious training. By modifying legal custody to sole [custody] with [Pederson], the court restricted [Meyer] from participating in decisions regarding the child in the areas of education, health care and religious upbringing.
>
> 65. During his parenting time in February 2015 [Meyer] admitted to unilaterally and without notice to [Pederson] making decision(s) to (1) keep the child home from school, (2) not allow [Pederson] to take the child to a dental appointment she made with his regular doctor, (3) make another dental appointment with a different (not his regular doctor) dental specialist, (4) take the child to the dental appointment he scheduled, (5) only later telling [Pederson] that he had already had the minor child evaluated and the appointment that [Pederson] earlier made for the same afternoon was no longer necessary and then (6) argued with [Pederson] as to what course of treatment was the most appropriate.
>
> 66. [Meyer] attempted to justify his actions by explaining that because [the child] was with him for his parenting time, what he did was "routine daily care" and the decisions he made were day to day decisions he was entitled to make even as a non legal custodial parent. [Meyer] claims that his employment and experience as a neurosurgeon change the definition of what is a "day to day issue" versus an "emergent issue." [Meyer's] justifications to excuse or make his behavior and actions acceptable were not credible.
>
> 67. [Meyer's] actions were intended to deny [Pederson's] legal custodial rights under the Iowa Judgment and Decree dated August 31, 2012.

Although Meyer argues that the concept of legal custody is too vague to inform him of his rights, Minn. Stat. § 518.003, subd. 3(a) (2014), defines it in the terms used by the

8

district court: "'Legal custody' means the right to determine the child's upbringing, including education, health care, and religious training."

Meyer argues that the district court is punishing him for his actions in February 2015, but it is clear that Meyer considers it appropriate to continue to make healthcare and education decisions during his parenting time in violation of Pederson's right of legal custody. The district court's conditional contempt order will ensure that Meyer complies with the court's order. Because she has sole legal custody, Pederson makes the decisions about healthcare, and Meyer's failure to consult with her about the dental visit suggests that he is trying to circumvent that right. The findings support the district court's decision to hold Meyer in contempt.

Meyer raises other arguments in opposition to the contempt order. First, he argues that his constitutional rights were violated because he was not given sufficient preparation time to rebut Pederson's contempt motion. Pederson served the motion papers on September 18, 2015, by mailing them to Meyer and filed the papers on September 21, 2015, for an October 7 hearing. The district court found that the papers were served in a timely fashion. In its April 2016 review order, the district court said that the documents were served on September 29; this is an apparent error, because the motion papers were filed with the court on September 21 and the affidavit of service states that the papers were mailed to Meyer on September 18.

Second, Meyer argues that his contempt motion against Pederson was filed in April 2016, but the district court inexplicably delayed the hearing to October 7, 2016, to permit Pederson to file a counter motion. The district court record shows that Meyer's motion

was filed on May 5, 2015 for a hearing on June 25, 2015. The motion was served on Pederson on May 20, 2015. For reasons not explained in the record, the hearing was rescheduled for August 25, 2015. Meyer served additional documents on Pederson on June 8, 2015, including a request for an evidentiary hearing. On June 30, 2015, the district court rescheduled the hearing for October 7, 2015. The record does not explain why the hearing was rescheduled, but it follows Meyer's request for a half-day evidentiary hearing. Nothing in the record suggests that the district court deliberately delayed the hearing to benefit Pederson.

Third, Meyer argues that he was deprived of his constitutional right to assistance of legal counsel. The district court rejected this charge, noting that counsel must be appointed for indigent parties only when there is a possibility of confinement for contempt. The district court stated that because this was an initial contempt hearing, confinement was not a real possibility. *See Cox v. Slama*, 355 N.W.2d 401, 403-04 (Minn. 1984) (holding, in civil contempt proceeding, that counsel must be provided to an indigent party facing the real possibility of incarceration for contempt). The district court also found that because Meyer is a neurosurgeon, it was unlikely that he would qualify as indigent.[1]

We conclude that the district court's findings and the law support its conditional contempt order. Further, Meyer's constitutional rights were not violated by the service of Pederson's documents or by the continuance of the hearing to October 2015, which was done to accommodate Meyer's request for an evidentiary hearing. Finally, Meyer's claim

---

[1] Meyer has requested in forma pauperis status several times and has been denied that status.

that he was deprived of his right to counsel lacks merit because he was not facing a real possibility of incarceration for his contempt.

**II. The district court did not abuse its discretion by refusing to admit evidence that was not relevant.**

Meyer argues that the district court abused its discretion by refusing to admit "*Spreigl* evidence." Meyer requested that the district court admit evidence of Pederson's alleged misconduct from 2007-2013 or order discovery of documents from this time period. Included in these requests were a psychological exam performed when Pederson was applying to be an egg donor in 2007; a custody evaluation ordered by the Iowa court in 2009; and documents filed in California court proceedings shortly after the child's birth. The district court refused to compel discovery and admitted orders only from the Iowa court proceedings.

*Spreigl* evidence, or evidence admissible under Minn. R. Evid. 404, generally is used in criminal proceedings. *See* Minn. R. Evid. 404 (a), (b) (referring to character of accused or victim; setting forth use of rule 404 evidence in a criminal trial). In civil proceedings, this court reviews the district court's ruling on the admissibility of evidence for an abuse of discretion, and will reverse only if the district abused its discretion and thereby prejudiced the objecting party. *Melius v. Melius*, 765 N.W.2d 411, 417 (Minn. App. 2009). Here, the district court ruled that the earlier documents were not relevant to the issues in the contempt proceeding, which dealt with behavior occurring during a certain time frame. The district court's ruling is not an abuse of discretion.

**III. The district court was not biased against Meyer.**

Meyer argues that the district court is biased against him. Primarily, Meyer asserts that the bias is demonstrated by the district court's order stating that Pederson had requested mediation of parenting time disputes when Meyer had actually requested mediation. Meyer also points to correspondence from the district court that (1) clarified court rules that prohibit ex parte communications between one party and the court; (2) summarily described court rules regarding service of correspondence; (3) returned documents that were not filed with the court; and (4) declined to offer legal advice.

"No judge shall sit in any case if that judge is interested in its determination or if that judge might be excluded for bias from acting therein as a juror." Minn. R. Civ. P. 63.02. Disqualifying bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *In re Estate of Lange*, 398 N.W.2d 569, 573 (Minn. App. 1986). A party must establish actual prejudice. *Olson v. Olson*, 392 N.W.2d 338, 341 (Minn. App. 1986). Mere adverse prior rulings or minor deviations are not sufficient to demonstrate bias. *Id.*

A judge must disqualify himself if his impartiality is reasonably subject to question. *State v. Cleary*, 882 N.W.2d 899, 904 (Minn. App. 2016). "Impartiality is defined as the absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as the maintenance of an open mind in considering issues that may come before a judge." *Id.* (quotation omitted). The standard for determining judicial bias is whether a reasonable or objective layperson with full knowledge of the matter would question the judge's impartiality. *Id.*

Meyer argues that the court is biased because it stated that Pederson has requested mediation several times, but, in actual fact, he has. Meyer omits the fact that he refuses to engage in mediation or alternative dispute resolution about parenting time unless the parties can also mediate the issue of custody. The other documents properly outline the court's duty to refuse to engage in ex parte communications with a party, to accept unfiled documents, and to offer legal advice.

Our review of the district court file does not substantiate Meyer's claim of bias. We note that Meyer has consistently raised the question of judicial bias when rulings unfavorable to him are made by a court.

**Affirmed.**