ROSS, Judge
After the state charged Anton Schloegl with domestic assault, the district court issued a no-contact order prohibiting him from having contact with the alleged victim, including in court. After the victim testified against him, Schloegl, who was representing himself, declined to cross-examine her expressly to avoid violating the order. Also during the trial, Schloegl yelled profanities and threw a pitcher. The jury found Schloegl guilty of domestic assault, and the district court found him guilty of criminal contempt for his courtroom misconduct. Because the district court was not required to present the question of Schloegl's criminal contempt to a jury and the circumstances support the contempt finding, we affirm in part. But we hold that Schloegl's right to confront an adverse witness was denied when the district court did not expressly relieve Schloegl of the no-contact order's facial prohibition against having contact with the state's witness during his trial for the purpose of cross-examination. We therefore reverse in part.
*17 FACTS
Police arrested Anton Schloegl and the state charged him for allegedly assaulting S.O., his fiancée, during a car trip to Duluth in April 2016. During Schloegl's arraignment on two counts of misdemeanor domestic assault, the district court issued a no-contact order prohibiting Schloegl from having any contact with S.O. The district court orally emphasized, "No contact means no contact whatsoever." It warned that "any attempt to contact her whatsoever" would result in his being "charged with new crimes." It cautioned, "[Y]ou have no idea how many guys never even make it out of jail before they violate these and they find themselves in deeper water." The part of the written order that we focus on here emphasizes that the prohibition against contact with S.O. "applies regardless of whether you are in jail or at the courthouse for a court appearance."
Schloegl discharged his public defender and proceeded to trial without legal counsel. The prosecutor called S.O. as the state's first witness. She testified that while Schloegl drove them toward Duluth she and Schloegl began arguing about her interaction with another man. She said that Schloegl pulled her engagement ring from a necklace around her neck and threw it out the window. She said that he grabbed her hair, struck her in the temple, and forced her head downward and caused it to hit the window. She testified that when Schloegl pulled over and directed her to drive, she ran for help and called police.
When the prosecutor ended S.O.'s direct examination, the district court asked Schloegl if he had any questions for her:
District Court: No questions?
Schloegl: What do you mean questions?
District Court: Do you have any questions that you wanted to ask?
Schloegl: For the person on the stand?
District Court: Yes.
Schloegl: But I have no contact order, so no.
District Court: That's fine. You can step down then, ma'am.
Schloegl: I don't want to get more charges.
The prosecutor then called a police officer to testify. At the close of the state's case, the district court invited Schloegl to present his case, asking whether he intended to call any witnesses. Schloegl responded angrily with two profanities directed at the court. The district court made a record of what happened next: "Mr. Schloegl has been removed from the courtroom after an outburst where he threw a pitcher onto the ground."
The district court instructed the jury the following day, and the jury found Schloegl guilty of both domestic-assault charges. The district court entered convictions of assault and of direct contempt of court for Schloegl's outburst. It ordered Schloegl to serve a 90-day sentence for contempt. At his sentencing for domestic assault, Schloegl moved the district court to vacate the contempt conviction. The district court denied the motion and sentenced him to two concurrent 90-day jail terms for the domestic-assault convictions, which were to run consecutively to the contempt sentence.
Schloegl appeals.
ISSUES
I. Did the district court violate Schloegl's constitutional right to confront witnesses?
II. Did the district court abuse its discretion by finding Schloegl to be in direct criminal contempt for his outburst at trial?
*18 ANALYSIS
Schloegl offers three arguments on appeal. He argues first that the district court denied him his Sixth Amendment Confrontation Clause right to cross-examine S.O. He argues second that the district court abused its discretion by finding him in direct criminal contempt without a jury determination and that the circumstances do not warrant the finding or punishment. And he argues third that the district court erred as a matter of law by imposing two sentences for domestic assault when both charges arose from a single behavioral incident. We hold that Schloegl's Sixth Amendment rights were violated, we reject his criminal-contempt challenge, and we do not reach his sentencing challenge.
I
Schloegl argues that the district court violated his right to confront S.O. as a witness against him. The Sixth Amendment's Confrontation Clause states, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." This procedural guarantee affords every criminal defendant the "opportunity for effective cross-examination." Delaware v. Fensterer , 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) ; see also Crawford v. Washington , 541 U.S. 36, 57, 124 S.Ct. 1354, 1367-68, 158 L.Ed.2d 177 (2004). Whether a defendant has been denied the right to confrontation is a question we review de novo. State v. Caulfield , 722 N.W.2d 304, 308 (Minn. 2006).
Schloegl argues that the district court violated his confrontation right by failing to inform him that he had the right to cross-examine S.O. despite the no-contact order's apparent restriction prohibiting Schloegl from having any contact with S.O. The Confrontation Clause prohibits impermissible "restrictions imposed by law or by the trial court on the scope of cross-examination." Fensterer , 474 U.S. at 18, 106 S.Ct. at 294. We therefore consider whether the no-contact order prohibited Schloegl from cross-examining S.O. This is a close case.
Taken most literally, the no-contact order prohibits Schloegl from cross-examining S.O. The order prohibits Schloegl from having any contact with S.O. "directly, indirectly or through others, in person, by telephone, in writing, electronically or by any other means," even if Schloegl is "at the courthouse for a court appearance." The order provides for only one exception, allowing him to contact S.O. by mail; its courthouse restriction does not express any exception for cross-examination. We are sure the district court did not intend this result, but by prohibiting Schloegl from having any contact with S.O. even "at the courthouse" during a court proceeding, the order invited Schloegl's literal interpretation that he would become subject to criminal punishment if he personally cross-examined S.O. Although we are certain that no district court would punish a defendant for cross-examining a witness under such an order, we cannot say that Schloegl's literal interpretation is textually unfounded.
Schloegl argues specifically that the district court denied him the right of confrontation by failing to resolve the conflict between his express understanding of the no-contact order's restriction and his right to cross-examine S.O. The district court "has an obligation to safeguard" fundamental rights at trial, State v. Cassidy , 567 N.W.2d 707, 711 (Minn. 1997), and a criminal defendant's right to confront opposing witnesses is fundamental to a fair adversarial process, State v. Peltier , 874 N.W.2d 792, 804 (Minn. 2016). On these basic precepts, we conclude that the district court became obligated to expressly *19 allay Schloegl's stated burden on his cross-examination once the district court became aware that Schloegl read the court's order as exposing him to punishment for cross-examining the witness. The district court might have accomplished this in a number of ways. For example, it could have declared that it interpreted the order in a manner that eliminated any possibility that Schloegl's cross-examination would violate the order, or it could have orally modified the order's no-contact restrictions, expressly excepting the cross-examination of witnesses. But failing to address Schloegl's understanding that he would face a criminal penalty by cross-examining S.O. left Schloegl without a burden-free opportunity to exercise his Confrontation Clause right.
We are not persuaded otherwise by the state's argument that the district court has no duty "to educate" a defendant. The argument has general merit. But here it is not a matter of merely educating a defendant. Here the district court's written order was itself the instrument of Schloegl's stated misunderstanding that he could be punished for exercising his right. And the court learned of Schloegl's misunderstanding in the context of Schloegl's decision whether to cross-examine the state's primary witness.
We also are not persuaded by the three challenges offered by the dissent. We disagree with the dissent's position that Schloegl's failure to express a similar concern about his appearing in the same courtroom as S.O. proves that he did not sincerely believe that the no-contact order prevented him from questioning S.O. We do not base our opinion on the sincerity of Schloegl's statement that he was concerned about violating the no-contact order, but on the facts that the order literally prohibits contact even during court appearances and that Schloegl indicated that he was taking that restriction at face value as prohibiting his questioning of S.O. We also disagree that we are affording special leniency to Schloegl as a self-represented defendant. His status as a self-represented defendant is relevant to our opinion only because this status meant that cross-examination would have put him in direct contact with S.O. And we disagree that Schloegl is prohibited from relying on the Confrontation Clause on account of his failure to exercise his right to move the district court to modify the no-contact order. Schloegl's argument on appeal is not primarily that the district court failed to modify the no-contact order; his challenge is that the no-contact order, as unclarified by the district court, violated his right to cross-examine S.O.
The state and the dissent point to statements that suggest that Schloegl never really intended to cross-examine or call any witness, urging us to disregard Schloegl's statements suggesting his concern that cross-examining S.O. would expose him to punishment. The record does not establish certainly that Schloegl would not have cross-examined S.O. without the order. And even if it did, the Confrontation Clause guarantees every defendant the "opportunity" to cross-examine the witnesses against him. Fensterer , 474 U.S. at 20, 106 S.Ct. at 294. While the scope of cross-examination is left largely to the district court's discretion, the availability of it is not. See, e.g. , Chambers v. Mississippi , 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973) (explaining that right to cross-examination may be limited in appropriate circumstances but that "its denial ... calls into question the ultimate integrity of the fact-finding process") (quotation omitted). Whether Schloegl would have actually taken advantage of that opportunity and questioned S.O. therefore does not bear on the critical question, which is whether he was denied *20 the opportunity in the first place. Our answer to this question therefore does not cast doubt on any fact finding by the district court.
Not every Confrontation Clause violation requires reversal. We must also decide whether the violation was harmless beyond a reasonable doubt. State v. Courtney , 696 N.W.2d 73, 79 (Minn. 2005). The state argues that the error was harmless because Schloegl fails to explain "what might have been accomplished by cross-examination of S.O." The challenge misses the mark. Whether a violation of a defendant's Confrontation Clause right was harmless beyond a reasonable doubt does not depend on how effective the cross-examination might have been. Instead we consider harm by "assuming that the damaging potential of the cross-examination [would have been] fully realized." Delaware v. Van Arsdall , 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). And we then determine whether the denial of the damaging cross-examination was harmless based on numerous factors, including the importance of the testimony to the state, "whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id.
So scrutinized, the error was not harmless. Of the state's two witnesses, only S.O. detailed the events that occurred in the car during the alleged assault. By assuming that the full potential of cross-examination would have been realized, we must infer that S.O.'s credibility would have been impeached and that the jury would have developed reasonable doubts about the most relevant particulars in her version of events. The state's other witness had no first-hand knowledge about what occurred in the car, and, when asked if he observed "any physical indication that [S.O.] had been in a physical altercation," he responded, "[M]aybe a disheveled ... appearance." If S.O.'s testimony had been effectively impeached, the jury would have lacked sufficient evidence to find Schloegl guilty. Because the constitutional error was not harmless beyond a reasonable doubt, Schloegl is entitled to a new trial on the domestic-assault convictions.
II
Schloegl next argues that the district court improperly found him to be in direct criminal contempt for his courtroom outburst. We review contempt orders "for arbitrariness, capriciousness, and oppressiveness." State v. Tatum , 556 N.W.2d 541, 547 (Minn. 1996). Direct criminal contempt, as opposed to constructive criminal contempt, occurs in the court's presence. Minn. Stat. § 588.01, subds. 1-3 (2016). Schloegl maintains that his conduct did not justify the finding of direct criminal contempt because his conduct fits neither of the two elements under the contempt statute: "(1) disorderly, contemptuous, or insolent behavior toward the judge" that "tend[s] to interrupt the due course of a trial or other judicial proceedings" and "(2) a breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the business of the court."Id. , subd. 2(1), (2).
Yelling profanities in open court and throwing a pitcher to the floor in the context of Schloegl's tirade directed at the district court, which prompted a delay for Schloegl's removal, easily qualifies as disorderly, contemptuous, and insolent behavior toward the judge tending to interrupt the course of the trial. Schloegl's contention that his conduct was not as offensive as that of Lingwall in *21 State v. Lingwall , 637 N.W.2d 311 (Minn. App. 2001), is neither relevant nor convincing. It is not relevant because, when we held that Lingwall's profanity toward the court constituted criminal contempt, we certainly did not suggest that his degree of scorn was the minimum threshold to a finding of contempt. Lingwall , 637 N.W.2d at 312. And the argument is not convincing because we affirmed Lingwall's sentence of six months for his outburst of three profanities while here we consider a much shorter 90-day sentence for Schloegl's disrespectful outburst of two profanities and a pitcher tossing. By comparison, Schloegl's lesser punishment is sort of a bargain. The district court did not act arbitrarily, capriciously, or oppressively by finding that Schloegl's conduct constituted direct criminal contempt and jailing him for 90 days.
Schloegl argues alternatively that the contempt finding is invalid because "the court did not make the statutorily required order explaining the facts that constituted the contemptuous conduct." Although the district court can punish direct contempt summarily, it must make an order "reciting the facts as occurring in the immediate view and presence of the court ... and adjudging the person proceeded against to be guilty of a contempt, and that the person be punished as therein specified." Minn. Stat. § 588.03 (2016). The day after Schloegl's outburst, the district court detailed its reasoning:
Mr. Schloegl, we need to address also your behavior yesterday. As I indicated yesterday, your behavior was unacceptable, it was contentious[ ], it showed total disrespect and disregard for this Court and for the jury that was present.
Specifically, what you did is you stood up, you threw everything off the desk, including a pitcher, damaging property, did this in the presence of the jury. Interrupted the proceedings in an [in]appropriate manner. Your words, I don't recall specifically what they were, but you expressed significant vulgarity. Your behavior became so out of control that you had to be restrained and removed from this courtroom by two deputies.
That behavior, that conduct constitutes direct contempt of this court, and I am finding you in direct contempt of this court. I am sentencing you to 90 days in the Washington County jail to run consecutive to the current sentence that you have. In other words, you've got an additional 90 days.
This statement by the district court is an order that recites the facts that occurred in its immediate presence, adjudges Schloegl guilty, and punishes him accordingly. The district court met its duty under the statute.
Schloegl also argues that the district court should have exercised restraint and simply ordered him to wait outside the courtroom. A courtroom is not a classroom, and violations of the contempt statute are punishable at the court's discretion. See In re Cascarano , 871 N.W.2d 34, 37 (Minn. App. 2015). Nothing in the statute requires that the district court mildly respond to parties who explode contemptuously in front of the court, the jury, court staff, the attorneys, or the public in tantrums that interrupt or debase the administration of justice. Our review of the record convinces us that, in fact, the district court continually demonstrated considerable restraint in the face of Schloegl's antagonistic behavior.
Schloegl argues last that, even if the contempt holding is valid, this court should reverse it because the district court "imposed a criminal sanction in contravention of appellant's right to a jury trial and to counsel" under the Minnesota *22 and federal constitutions. The argument fails. A jury trial is required only for constructive-criminal-contempt cases and for direct-criminal-contempt cases that carry a penalty longer than six months. See Taylor v. Hayes , 418 U.S. 488, 496, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897 (1974) (explaining in a direct-criminal-contempt-case that jury trials are required for contempt that results in punishment longer than six months) (citing Bloom v. Illinois , 391 U.S. 194, 211, 88 S.Ct. 1477, 1487, 20 L.Ed.2d 522 (1968) ); Peterson v. Peterson , 278 Minn. 275, 279-80, 153 N.W.2d 825, 829 (1967) (explaining that jury trials are required only for constructive criminal contempt). Although Schloegl's contempt resulted in only a 90-day jail term, he maintains that, because the sentence was consecutive to his sentence for domestic assault, he actually received a 180-day sentence. On that theory, he asserts that, under Bloom , he deserves a jury trial. The Supreme Court rejected a similar argument in Codispoti v. Pennsylvania , 418 U.S. 506, 514-15, 94 S.Ct. 2687, 2692, 41 L.Ed.2d 912 (1974) ("That the total punishment meted out during trial exceeds six months in jail or prison [does] not invalidate any of the convictions or sentences, for each contempt has been dealt with as a discrete and separate matter at a different point during the trial."); see also Lewis v. United States , 518 U.S. 322, 327, 116 S.Ct. 2163, 2167, 135 L.Ed.2d 590 (1996) (rejecting petitioner's argument that because he was charged with two crimes, each of which carried a six-month sentence, the court should use the aggregate of the two sentences in determining whether he was entitled to a jury trial). We add that the argument is mathematically unsound. A 180-day sentence is essentially a six-month sentence, and only a direct criminal contempt that results in a sentence longer than six months requires a jury trial. See Lewis , 518 U.S. at 327, 116 S.Ct. 2163. Schloegl was entitled to no jury to decide whether he engaged in direct criminal contempt.
DECISION
The unclarified and unmodified no-contact order violated Schloegl's Sixth Amendment right to an opportunity to effectively cross-examine S.O., invalidating Schloegl's domestic-assault convictions and requiring a new trial. The district court did not abuse its discretion either by holding Schloegl in direct criminal contempt of court or by imposing a 90-day jail term as a consequence.
Affirmed in part and reversed in part .
Concurring in part, dissenting in part, Worke, Judge
WORKE, Judge (concurring in part, dissenting in part)
I concur with the majority's determination that the district court properly found Schloegl in direct criminal contempt of court. But I respectfully disagree with the majority's conclusion that Schloegl's right of witness confrontation was violated and with its reading of the record in support of that conclusion.
Schloegl was subject to an order for the protection of S.O. following charges related to events that occurred on April 15, 2016. The terms of the underlying no-contact order are self-evident. "No contact means no contact whatsoever." Schloegl was to "have no contact directly, indirectly or through others, in person, by telephone, in writing, electronically or by any other means with [S.O.]" The order specifically stated that it applied "regardless of whether [Schloegl was] in jail or at the courthouse for a court appearance."
On May 8, 2017, Schloegl appeared in the district court for trial on the underlying charges. He was represented by his *23 public defender. The public defender also appeared with Schloegl at three pretrial settings. The no-contact order was in place for the latter two hearings, and S.O. was present in the courtroom for both. At one pretrial hearing on June 21, 2016, S.O.'s victim advocate advanced S.O.'s request that the no-contact order be lifted, after which defense counsel conferred with the advocate. The district court then modified the no-contact order to allow contact by mail. The continued presence of S.O. at ongoing court proceedings contradicts Schloegl's assertion and the majority's conclusion that Schloegl expressly and reasonably interpreted the order as prohibiting him from exercising his trial rights. If Schloegl understood that he was precluded from having any contact with S.O. and "[didn't] want to get more charges," he would have also believed he was in violation of the order each time of contact. My review of the record demonstrates that Schloegl, as well as the district court, "reasonably interpreted" the no-contact order to allow for appearances in court and presentation of legal requests and defenses while S.O. was present.
Plea negotiations fell apart and Schloegl elected to discharge his public defender. Schloegl maintained to the court that he would represent himself. After he was fully informed of his responsibilities in representing himself and the complexities of trial, Schloegl indicated in the affirmative that he still wished to proceed with a jury trial. In response to specific inquiry by the court, Schloegl emphatically stated that he has "an amendment right that [he] could remain silent throughout the trial, and you guys have to find me guilty because you guys brought me here. So therefore, I don't have to say anything throughout the whole trial, and that's what I was planning on doing."
The jury trial proceeded. When asked by the court if he was planning on asking any questions during voir dire, Schloegl replied, "No, I am going to remain silent." When asked by the court if he wished to make an opening statement, Schloegl replied, "No comment." S.O. was then called as a witness. S.O. testified at length about the facts leading to the criminal charges against Schloegl. At the conclusion of the direct examination, the court asked Schloegl three separate times and in different manners whether he had questions for the witness. After the third inquiry, Schloegl responded that he had a no-contact order, "so no." Schloegl did not ask the court at any time whether it would violate the no-contact order if he elected to ask S.O. any questions on cross-examination, even though the district court asked if he had any questions for her. Another witness testified after S.O. The court asked Schloegl if he had any questions. Schloegl again chose not to question that witness. After the state rested, the district court asked Schloegl if he planned to call any witnesses, to which he replied:
SCHLOEGL: No. I just want to f-cking go back there. This is f-cking bullsh-t, that's what it is.
THE COURT: I'll ask the deputy to remove him from the courtroom, please.
SCHLOEGL: All this is f-cked up. Get the door.
THE COURT: The record should reflect that Mr. Schloegl has been removed from the courtroom after an outburst where he threw a pitcher onto the ground.
The district court then excused the jurors and Schloegl was brought back to the courtroom. After addressing his behavior Schloegl stated that he did not wish to be present in the courtroom for the duration of the proceedings.
*24 The record demonstrates not only that Schloegl believed he could defend himself without an attorney, but also that he had no intention of asking any questions or putting on any evidence at trial. The majority's characterization of the no-contact order as "literally" prohibiting Schloegl from cross-examining S.O. is simply not supported by the record. In fact, contrary to the majority's assertion, I do not find this to be a close case. The majority asserts that the district court was obligated to "expressly allay" Schloegl's apparent misunderstanding of his burden on cross-examination. In this respect, the majority is somehow able to read Schloegl's mind as to his "literal" understanding of the order for protection. I submit that the district court is better equipped, based on all of the circumstances here, to draw its own conclusion as to Schloegl's confusion or lack thereof.
Schloegl's Confrontation Clause argument was also not adequately raised in the district court. Minnesota courts require pro se defendants to comply with the rules of criminal procedure, and "[n]o extra benefits will be given to pro se litigants." State v. Seifert , 423 N.W.2d 368, 372 (Minn. 1988) (emphasis omitted), superseded on other grounds by rule , Minn. R. Crim. P. 28.02, subd. 5(17)-(19), as recognized in Black v. State , 560 N.W.2d 83, 86 (Minn. 1997). While Minnesota courts may grant "some latitude and consideration" to pro se litigants, "we cannot permit bending of all rules and requirements." Liptak v. State ex rel. City of New Hope , 340 N.W.2d 366, 367 (Minn. App. 1983). It is self-evident that one of an attorney's chief responsibilities is to understand the law and present legal arguments to the client's benefit. Nothing prevented Schloegl-after discharging his public defender-from "moving the court to modify or lift the [no-contact order]." See State v. Ness , 819 N.W.2d 219, 228 (Minn. App. 2012), aff'd 834 N.W.2d 177 (Minn. 2013). Here, because Schloegl chose to represent himself at trial, that responsibility fell to him. Failure to adequately challenge the no-contact order should end this court's inquiry.
Schloegl should not be entitled to a new trial. I respectfully dissent.